## THE KINGSTON.

*(District Court, D. New Jersey.   March 4, 1885.)*

1. MARITIME LIENS—MATERIAL AND LABOR USED IN CONSTRUCTION OF VESSEL
—CONTRACT.
   When materials are furnished and the labor is performed under a contract with the owner of a vessel, no general maritime lien can be claimed.
2. SAME—LIENS GIVEN BY STATE LAW—HOW ENFORCED IN UNITED STATES DISTRICT COURT.
   When it is attempted in the district court to give effect to liens created by state laws, they are enforced subject to all the qualifications and limitations imposed by those laws.

**3. SAME—JURISDICTION OF DISTRICT COURTS—ADMIRALTY RULE No. 12.**

The district courts of the United States have no jurisdiction to enforce liens arising under state laws, except when they are founded upon a contract maritime in its character.

Libel *in rem.*

The libel is filed in this case against the ferry-boat Kingston, to recover for materials furnished and work done upon the said steamer while she was in the course of construction at Newburgh, in the state of New York, and after she was launched and removed to Weehawken, in the state of New Jersey. The libel alleges that in the year 1883 the said ferry-boat, being then at Newburgh, in the state of New York, and being in need of certain appliances and machinery for electric lighting, the libelant, at the request of the owners or authorized agents of said ferry-boat, did agree to furnish the boat with such machinery and appliances, for the sum of $2,625, to be paid upon trial and acceptance of the same. Certain of the materials and some of the labor necessary therefor were furnished by the libelant at Newburgh, and then the said ferry-boat, having proceeded to Weekawken, in the state of New Jersey, the libelant did continue to furnish necessary materials and labor for such electric lighting, and did, in the month of November, 1883, complete the said machinery and appliances, which were thereafter, and in the month of December, 1883, accepted by the West Shore & Ontario Terminal Company, the owner of the said ferry-boat. The said West Shore & Ontario Terminal Company then was and still is a corporation organized and existing under the laws of the state of New Jersey. The libel further alleges that no part of the contract price for materials and labor has been paid, and claims that the libelant has a lien upon the said ferry-boat for the sum due under the general maritime law and the statutes of the states of New York and New Jersey.

The West Shore & Ontario Terminal Company have filed a claim as owner of the boat, and answered, setting up that on or about March 7, 1883, while the boat was in the course of construction at Newburgh, in the state of New York, by Ward, Stanton & Co., for the New York, Ontario & Western Railway Company, under contract, and before said ferry-boat was completed, or was even registered or enrolled, licensed or surveyed, the said libelant entered into a contract with the said New York, Ontario & Western Railway Company, at New York City, whereby said libelant contracted and agreed with said railway company to furnish said ferry-boat with certain electric lighting apparatus and appurtenances for the sum of $2,625; that afterwards the said railway company sold said boat, at a fair and *bona fide* sale, to the West Shore & Ontario Terminal Company, and the said terminal company did, by a certain agreement, dated July 15, 1883, between the said terminal company, of the first part, the New York, West Shore & Buffalo Railway Company, of the second part, and the New York, Ontario & Western Railway Company, of the third part,

lease said boat and other property to the said two railway companies, jointly, for the period of 99 years from the first day of August, 1883; for which reasons they allege that the libelant has no claim or lien on said boat, but its remedy, if any, is against the New York, Ontario & Western Railway Company; that the services performed and materials furnished were not performed or furnished upon the credit of the boat, but under said contract, and upon the credit of the New York, Ontario & Western Railway Company; and that the libelant is not entitled to the lien claimed by it under the statutes of New Jersey, because the contract was not made within the state of New Jersey, and because the greater part of said materials and services were furnished and performed, not in the state of New Jersey, but in the state of New York, and because more than nine months have elapsed since said debt was contracted. The receivers of the New York, West Shore & Buffalo Railway Company have also answered as lessees of the said ferry-boat, and have set up substantially the same defense.

*Butler, Stillman & Hubbard,* for libelants.

*Vredenburgh & Garretson,* for respondents.

NIXON, J. 1. Does a lien exist under the general maritime law? The libel admits, the answers claim, and the testimony shows that the materials were furnished and the labor performed under a formal written contract, executed in New York, between the libelant and the owner of the boat then in the course of construction, and not yet finished, or documented in any custom-house. I will not stop here to inquire whether any maritime lien can be implied for materials and labor furnished to a vessel thus circumstanced, with neither enrollment nor license, and not yet ready for employment in commerce or navigation. Waiving that, for the present, it seems to be settled in the American admiralty that, where the materials are furnished and the labor is performed under a contract with the owner of the vessel, no general maritime lien can be claimed. The question was discussed and settled by the supreme court in *The St. Jago de Cuba,* 9 Wheat. 416, and I am not aware that their decision has been qualified or overruled, in any subsequent case. The court there said:

"The necessities of commerce require that, when remote from his owner, he (the master) should be able to subject his owner's property to that liability, (a lien,) without which it is reasonable to suppose he will not be able to pursue his owner's interests. But when the owner is present the reason ceases, and the contract is inferred to be with the owner himself, on his ordinary responsibility, without a view to the vessel as the fund from which compensation is to be derived."

The same question was before Judge HOPKINSON, of the Eastern district of Pennsylvania, in *Sarchet* v. *The Davis,* Crabbe, 196, and was examined with his usual discrimination and care, and he reached the same result.

But it is insisted that if no general maritime lien exists, a lien has been created by the state laws of New York and New Jersey which

the courts of the United States should enforce. In the first place, it is questionable whether any lien has in fact arisen under the provisions of the laws of either of these states. When it is attempted here to give effect to liens created by state laws, they are enforced subject to all the qualifications and limitations imposed by those laws. It is provided in the New York statute that the debt contracted for materials or labor on any ship or vessel "shall cease to be a lien whenever the ship or vessel shall leave the port at which such debt was contracted, unless the person having the lien shall, within twelve days after such departure, cause to be drawn up and filed specifications of such lien, which may consist either of a bill of particulars of the demand or a copy of any written contract under which the work may be done, with a statement of the amount claimed to be due from such vessel, the correctness of which amount shall be sworn to by such person, or his agent or representative." The debt in this case was contracted in New York while the boat was being built at Newburgh; but after the commencement of the work she was removed out of the port of New York and taken to Weehawken, a port in New Jersey, where the residue of the labor was performed and the materials furnished. There is no proof that any specifications or copy of the contract have been filed in New York, verified by the oath of the parties, which seems to have been necessary in order that any lien should continue to attach.

The New Jersey statute agrees to give liens only for debts contracted within that state. The materials were furnished and the labor done under a contract executed in New York, and made with the owner of the boat before she was finished and ready for service on the water. Does it not follow, under such circumstances, that the libelant waived the lien, and intended to look to the personal responsibility of the owner? But, in the next place, and without expressing an opinion on the above facts, have the district courts of the United States any jurisdiction to enforce liens arising under state laws, except where they are founded upon a contract maritime in its character?

The proceedings in this case are under the twelfth rule of admiralty practice. This rule, as prescribed by the supreme court in 1844, authorized a libel *in rem* where the local law of a state gave a lien upon a vessel for supplies or repairs in her home port. Another change was made in 1859, taking away the right to proceed *in rem* against domestic vessels for supplies or necessaries, although a lien was created by the state law. It stood thus until 1872, when the court announced the rule as it now is, to-wit:

"That in all suits by material-men for supplies or repairs or other necessaries, the libelant may proceed against the ship and freight *in rem*, or against the master or owner alone *in personam*."

There has been much conflict in the courts as to the meaning of the new rule, but since its adoption the supreme court, in *The Lottawanna*, 21 Wall. 580, held that the district courts of the United

States, having jurisdiction of the contract as a maritime one, might enforce liens given for its security, even when created by the state laws. The inference is plain that the court meant to affirm that no such jurisdiction existed when the contract was not of a maritime nature.

The libel is therefore dismissed for want of jurisdiction.