## THE MARY F. CHISHOLM.

(District Court, D. Maine. April 26, 1904.)

### No. 74.

1. ADMIRALTY JURISDICTION—GROUNDS—STATE STATUTE ENLARGING REMEDY.
   A state statute giving a lien on vessels cannot enlarge the jurisdiction of a court of admiralty, which depends upon whether or not the subject-matter of the suit is maritime.

2. SAME—MARITIME CONTRACT—SALE OF SUPPLIES TO FISHERMEN.
   A sale by a merchant to fishermen, who are about to go on a fishing voyage under a lay contract, of tobacco, clothing, and other articles for their personal use, is not a maritime transaction, and a court of admiralty is without jurisdiction of a suit to enforce collection therefor, although a lien is claimed on the vessel under a state statute.

3. MARITIME LIEN—SUPPLIES—MAINE STATUTE.
   Clothing, tobacco, and other articles for personal use sold to fishermen about to start on a fishing voyage under a lay contract are not "supplies necessary for the employment" of the vessel, within the meaning of the Maine statute giving a lien for such supplies.

4. ADMIRALTY—COSTS—DISMISSAL FOR WANT OF JURISDICTION.
   Where a suit in admiralty is dismissed for want of jurisdiction of the subject-matter, costs cannot be allowed.

In Admiralty. Suit to enforce statutory lien for supplies.

William H. Gulliver, for libelants.
Benjamin Thompson, for claimant.

HALE, District Judge. This is a libel in rem, filed on the 14th day of July, 1903, by Rosenberg Bros., clothing dealers in the city of Portland, against the fishing schooner Mary F. Chisholm, hailing from the port of Portland, and owned by residents of Portland, to recover for certain articles furnished and delivered to 14 members of the crew of that vessel on the 20th day of September, 1902. The libel alleges that the schooner Mary F. Chisholm is a domestic vessel, of the burden of 70 tons, belonging to the port of Portland; that on the 20th day of Sep-

¶ 1. Admiralty jurisdiction as to enforcement of liens under state laws, see note to The Electron, 21 C. C. A. 21.

See Admiralty, vol. 1, Cent. Dig. § 194.

¶ 2. Admiralty jurisdiction as to matters of contract, see notes to The Richard Winslow, 18 C. C. A. 347; Boutin v. Rudd, 27 C. C. A. 530.

¶ 3. Maritime liens for supplies and services, see note to the George Dumois, 15 C. C. A. 679.

tember, 1902, said schooner was in the port of Portland, and in need of supplies for her crew; that the libelants, at the request of the master, furnished to and for said vessel necessary supplies, clothes to her crew, and other articles which were necessary for her employment; and that all of said materials and clothing were necessary for the crew of said vessel, were furnished on the credit of said vessel, and became a lien thereon under the statutes of the state of Maine. The libel further sets out that the master and owner of said vessel have refused to pay for such supplies.

The evidence shows that at the time of the furnishing of the alleged supplies the Mary F. Chisholm was a domestic vessel, owned by several responsible persons living in Portland; that she was, and for some time prior thereto had been, engaged in seining for mackerel; that during the season of 1902 she made three mackerel trips; that the crew of said vessel on said trips consisted of six men, all told; that the libelants were, at the time of furnishing the alleged supplies, engaged in the clothing and furnishing business at No. 377 Fore street, in the city of Portland; that they had been engaged in such business for about 15 years, and during that time had been owners of fishing vessels, and interested in furnishing supplies to that class of vessels; that they were familiar with the custom which exists in Portland respecting the manner in which that class of vessels were sailed, and had seen settlements made between crews and owners for the fish taken on such vessels; that the master of this vessel had traded with the libelants for many years, and, after completing a voyage, he had been in the habit of settling with them for such supplies as the crew had purchased; that the crew of the Chisholm were shipped under the usual lay, and by the usual shipping articles, for the mackerel fishery, in and by which it was agreed that the owners, at their own expense, should equip the schooner with all necessary tackle and apparel for the carrying on of the mackerel fishery, and that the vessel should be so equipped and fitted during the fishing season; that the master and the several fishermen comprising the vessel's crew agreed to pursue the mackerel fishery in said schooner; that the shipping articles further provided that the fish caught, or the proceeds thereof, should, after deducting the expense of the "great general charges"—which were to consist of "packing, hoisting, towage, and commissions"—be divided as follows: To the owners of the vessel, for their share, one-half part thereof, the residue to be divided among the fishermen, including the master, they agreeing to pay for water, medicines, all canned goods, eggs, and pickles, cook's wages, and for tarring and hanging the seine; that some time in July, 1902, prior to the schooner going out on her second trip, the master and some of the schooner's crew went to the libelants' store and obtained certain outfits, such as rubber boots, oilskins, mittens, and tobacco; that the libelants made out a bill for each lot of goods to the men to whom the goods were delivered; that upon her return from the fishing voyage, some time in September, the master paid the libelants the amount coming due from the respective men, and deducted it from their share of the catch; that about September 22, 1902, a few days after the settlement for the supplies purchased in July, Capt. Ellsworth went to the libelants' store with 13 or 14 men who were going out in the schooner for another trip; that the libelants

furnished the crew with the following articles as called for, which were
to be charged as on the last trip:

| | | | |
|---|---|---|---:|
| Tobacco, | of the value of | | $23 60 |
| Two pairs of slippers, | " | " | 2 00 |
| Stockings, | " | " | 1 25 |
| Mittens, | " | " | 10 |
| Three pairs rubber boots, | " | " | 9 00 |
| One pair of leather boots, | " | " | 4 00 |
| One pair of shoes, | " | " | 2 00 |
| One lot of oilclothes, | " | " | 3 25 |
| One hat, | " | " | 50 |
| Two blankets, | " | " | 2 00 |
| One quilt, | " | " | 1 00 |
| One shirt, | " | " | 1 25 |
| One mattress, | " | " | 75 |

The answer alleges that the schooner was being fitted out for a
mackerel voyage on the customary lay; that the supplies in question
were furnished to the various members of said vessel's crew who de-
sired to make purchases for their own personal use; that the payment
therefor was to be deducted from the shares coming due to the various
members of the schooner's crew upon the settling up of said fishing voy-
age. It denies that any of the goods in question were supplied upon the
credit of the vessel, or were in any way necessary for her employment
in said business; and that, as no fish whatever were taken on the voyage
in question, no moneys became due to the crew.

The court must first consider whether the subject-matter of the suit
is within its jurisdiction. Jurisdiction is conferred upon the admiralty
court, as upon all the federal courts, by the Constitution, and cannot be
enlarged by our state Legislature. In The James T. Furber, 129 Fed.
808, this court has quite fully discussed the law pertaining to juris-
diction over contracts where a lien is claimed under the state statute;
in that case we have cited many authorities touching this general sub-
ject. It is perfectly clear that the subject-matter presented by a suit
must be distinctly, essentially, and wholly maritime in order to give the
court jurisdiction. The test, then, to be applied, is, does the suit arise
from the necessities of navigation or from any matters relating to the
commerce of the sea? In Diefenthal v. Hamburg-American Packet Co.
(D. C.) 46 Fed. 397, Judge Billings said:

"It [the contract before the court in that case] is, after all, not a contract
where, until supplies are actually furnished, the contractors relied upon any
ship, but upon the other contracting parties. * * * It was a general con-
tract for the sale and delivery of provisions. * * * The objection to the
jurisdiction, which it seems to me must prevail, is that this contract, though
relating remotely to navigation and maritime commerce, is separated so far
from them that it did not spring from the necessities of navigation, and is not
within the considerations which make it essentially and distinctively mari-
time."

The court found that the contract in that case was personal in its
character, preliminary in its nature, and not within the admiralty juris-
diction.

In Scott v. The Morning Glory, Fed. Cas. No. 12,542, Judge Hoff-
man said:

"It is impossible not to recognize, in the recent decisions of the Supreme
Court, a disposition to confine the admiralty jurisdiction within narrower

limits, and restrict maritime liens to fewer cases than is desired by its more ardent advocates. * * * To give the court jurisdiction over a contract as maritime, it must relate to the 'trade and business of the sea,' or must be essentially maritime in its character. * * * If the jurisdiction be construed to embrace not only matters directly connected with maritime commerce, but those tending toward or conducive to it, a large and indefinite field would be opened."

In The Perseverance, Fed. Cas. No. 11,017, Judge Betts said:

"The essential requisite of a contract, to bring it within the jurisdiction of an admiralty court, is that it must be one which is to be performed on the high seas, or which has relation to a maritime service. The most enlarged interpretation of the term 'maritime.' as applied to the jurisdiction of this court, has not been extended beyond subjects or engagements which are necessarily connected with services to be rendered on tide waters, or supplies furnished to vessels in aid of a voyage, or labor, or materials, or cash advanced to obtain such supplies."

In The Kingston (D. C.) 23 Fed. 200, Judge Nixon said:

"There has been much conflict in the courts as to the meaning of the new rule, but since its adoption the Supreme Court, in The Lottawanna, 21 Wall. 580 [22 L. Ed. 654], held that the District Courts of the United States, having jurisdiction of the contract as a maritime one, might enforce laws given for its security, even when created by the state laws. The inference is plain that the court meant to affirm that no such jurisdiction existed when the contract was not of a maritime nature."

See, also, the decision of Judge Webb in The H. E. Willard (D. C.) 53 Fed. 599; the decision of Mr. Justice Gray and Judge Putnam in the same case (C. C.) 52 Fed. 387; The Corsair, 145 U. S. 335, 12 Sup. Ct. 949, 36 L. Ed. 727; The Orleans, 11 Pet. 175, 9 L. Ed. 677; People's Ferry Co. of Boston v. Beers, 20 How. 393, 15 L. Ed. 961; Campbell v. Hackfeld & Co., Ltd. (C. C. A.) 125 Fed. 696. In the late case, Reliance Lumber Co. v. Rothschild (D. C.) 127 Fed. 745, the court, Judge McPherson, treats in a very complete manner of the subject which we are now discussing, and at page 749 he cites the controlling decisions relating to undertakings which are merely personal or preliminary in their character, and which, while they lead to maritime contracts, do not themselves relate to the business and commerce of the sea. The same case also decides that, where a libel is dismissed for want of jurisdiction of the subject-matter, costs cannot be allowed. This decision in reference to costs is upon the authority of Citizens' Bank v. Cannon, 164 U. S. 324, 17 Sup. Ct. 89, 41 L. Ed. 451. It is clear, then, that the jurisdiction depends upon the nature of the subject-matter of the contract, and not upon the existence of a lien. The lien affects only the form of the proceedings and the character of the remedy.

In the case before us, the court is of the opinion that there is not sufficient in the proofs before it—the material part of which has been stated—to give jurisdiction to the court. The articles which were to be furnished to the fishermen were tobacco, clothing, rubber boots, and other articles relating to the personal use of the fishermen who were to sail the boat upon shares. The goods were delivered to the fishermen, nearly all of them, on the land, in the store of the libelant. There is not enough in the evidence to bring the case within the rule which we have cited, that supplies must be for the ship, in aid of the voyage. If we should hold that the furnishing of these goods was a maritime contract,

then the furnishing of a single fisherman, in a common fishing boat, with wearing apparel, might, under the same rule, be held to pertain to navigation, and to be within admiralty jurisdiction. The contract appears to the court to be one of the undertakings which courts have classed as personal and preliminary, and not within the jurisdiction of the admiralty court.

Another question is raised, by the language of the statute, as to whether, even if the court had jurisdiction, the supplies furnished were "necessary" supplies. The state statute, which is found in chapter 287, page 255, of the Laws of 1889, and in the Revised Statutes of the state of Maine, chapter 93, § 7, is as follows:

"All domestic vessels shall be subject to a lien to any part owner or other person to secure the payment of debts contracted and advances made for labor and materials necessary for their repair, provisions, stores, and other supplies necessary for their employment, and for the use of a wharf, dry dock, or marine railway, provided, that such lien shall in no event continue for a longer period than two years from the time when the debt was contracted or advances made."

Under this statute the lien is given to vessels to secure the payment of "stores and other supplies necessary for their employment." Were the supplies furnished in this case necessary for the employment of the vessel? The courts have repeatedly held that a state statute giving a lien for supplies furnished at a home port must be construed strictly, and cannot be sustained by construction, analogy, or inference. The Steamship Yankee Blade, 19 How. 82, 15 L. Ed. 554; The Paola (C. C.) 32 Fed. 174; The Kiersage, Fed. Cas. No. 7,762; The Red Wing (D. C.) 14 Fed. 869. In The Cabarga, Fed. Cas. No. 2,276, Mr. Justice Nelson, sitting upon the circuit, said:

"Where the materialman or ship chandler has parted with the materials and stores, and the ship has received the benefit of them, * * * in those cases only the lien attaches. In the case of materials and repairs, the articles furnished enter into and give value to the ship itself; and in the case of stores, they are necessary to enable her to earn her freight."

In the case at bar, we have already said that the effect of a state statute cannot be to enlarge the jurisdiction of the court, but only to furnish a remedy which did not exist before the statute was passed. Boon v. The Hornet, Fed. Cas. No. 1,640. We are of the opinion that the remedy within the contemplation of the state statute must be limited to such articles as are for the benefit of the ship, in aid of the voyage, and necessary in order to make the ship accomplish her undertaking. We do not think the supplies furnished in the case before us are supplies, within the meaning of the statute, which were necessary for the employment of the vessel. These supplies all relate to the personal needs and convenience of men who are preparing to enter upon a fishing voyage. Even though the crew would not have shipped if they could not have had these supplies furnished them, still this fact cannot enlarge the statute, and make the articles which were furnished them "necessary" within the meaning of the law. The articles furnished were useful and convenient for the personal needs of the fishermen, but were not, in our opinion, "supplies necessary for the employment of the vessel."

The decree may be entered: Libel dismissed, but without costs.