THE MARY F. CHISHOLM.

(District Court, D. Maine. December 10, 1904.)

No. 135.

1. MARITIME LIENS—SUPPLIES—JUDGMENT OF MASTER AS TO NECESSITY.

Food supplies ordered by the master of a fishing schooner, who was also managing owner, for the use of the crew on a fishing voyage, under the usual lay contracts, in the absence of any showing of bad faith on his part, will be presumed to be supplies "necessary for the employment" of the vessel, within the meaning of the Maine statute giving a lien for such supplies, and the court will not undertake to determine that certain of the articles were "luxuries" for which the vessel is not liable.

In Admiralty. Suit to enforce statutory lien for supplies.

Benjamin Thompson, for libelant.
William H. Gulliver, for respondents.

HALE, District Judge. This is a libel in rem, brought on the 3d day of May, 1904, by Charles F. Guptill against the fishing schooner Mary F. Chisholm, to recover for certain chandlery stores and other supplies furnished and delivered by the libelant during the fishing seasons of 1902 and 1903, while she was engaged in the prosecution of the mackerel fishery. The lien which is sought to be enforced in the present suit is based upon section 7 of chapter 93 of the Revised Statutes of Maine, relating to liens upon domestic vessels, which is as follows:

"All domestic vessels shall be subject to a lien to any part owner or other person, to secure the payment of debts contracted, and advances made for labor and materials necessary for their repair, provisions, stores, and other supplies necessary for their employment, and for the use of a wharf, dry-dock or marine railway, provided that such lien shall in no event continue for a longer period than two years from the time when the debt was contracted or advances made."

This fishing schooner has lately been before the court in another case relating to supplies delivered to it. See 129 Fed. 814. The libel alleges that the schooner is a domestic vessel of the burden of 70 tons,

¶ 1. Maritime liens created by state laws, see note to The Electron, 21 C. C. A. 21.

hailing from the port of Portland, and owned by residents of Portland, and that, during the fishing seasons of 1902 and 1903, James A. Ellsworth, the claimant, was master and managing owner; that in the months of April, May, June, July, August, and September, 1902, and in the months of June and July in the year 1903, the schooner was in the port of Portland, and was in need of certain material, stores, and supplies in order to repair and equip her and to render her seaworthy, and to enable her to enter upon and continue in the prosecution of certain fishing voyages; that the libelant, at the special request of the master and agent, furnished upon the credit of said vessel certain materials for her repair, and provisions, stores, and other supplies necessary for her employment, and that, under and by virtue of the laws of the state of Maine, the libelant is entitled to a lien upon said vessel. The answer admits that at the times mentioned in the libel the schooner required certain stores and supplies which were necessary in order to equip her and enable her to enter upon and continue in her business, and that the libelant furnished such stores upon the credit of the schooner. It, however, alleges that the schooner, during the times mentioned in the libel, was sailed on the customary lay for the mackerel fishery, and that under such lay it was the duty of the vessel to supply the crew with necessary provisions, and no more, and that milk, green vegetables, canned goods, butter, preserves, pickles, and similar supplies are not "necessary," but are luxuries, and are to be paid for by the crew of the vessel; that such supplies were not ordered and supplied upon the credit of the vessel, and were not in any way necessary for her employment in said business, but were wholly for the individual members of the schooner's crew.

It is agreed between the parties that all the items in the libelant's account were furnished by him on the order of Capt. Ellsworth, and delivered to the schooner, and that the prices charged for all these goods are the usual and customary market prices, except in the matter of one item of 307 yards of Woodbury duck, of the value of $85.96, and two items of 195 yards of York duck, of the value of $29.25, and 30 yards of cotton duck, of the value of $9. The whole controversy is then embraced in two questions: First. Are the prices charged for the duck reasonable? Second. Under the statutes of Maine, does a lien exist for stores and provisions of the character set out in the schedules filed in the libel, these being referred to in the claimant's answer as "luxuries," and comprising "milk, green vegetables, canned goods, butter, preserves, pickles, and like supplies"?

The first question is purely one of fact. The libelant testifies that the charges for the duck were at the regular market price, that the bills for them were made up and presented to Capt. Ellsworth, and that he never made any objection. We do not remember that the evidence shows any denial by the defendant. Other men of large experience in the chandlery business were called as witnesses by the claimant, but did not testify upon this point. Upon the evidence in the case, the court finds that the prices charged for the duck are reasonable.

The second question involves the construction of section 7 of chapter 93 of the Revised Statutes of Maine, relating to liens on domestic vessels, and the nature of the goods which may be furnished under this

statute. The entire amount of libelant's claim is the sum of $1,246.42. The claimant does not deny that the prices of all the outfits were correct and reasonable, but he does deny that, under the statute, certain articles in the libelant's schedules were necessary; he insists that those articles come under the designation of "luxuries." May a recovery be had for them in this suit? The claimant's objection is, first, that the schooner could have proceeded in the mackerel fishery without this class of outfits or supplies; second, that there is a custom in the port of Portland for the crews of vessels in the mackerel fishery to pay for this class of goods; that, as to this particular schooner, it was expressly agreed between the master and crew that the crew should pay for these supplies, and that the libelant knew of both the custom and the agreement. In our decision, 129 Fed. 814, this court held "that the remedy within the contemplation of this statute must be limited to such articles as are for the benefit of the ship in aid of the voyage, and necessary in order to make the ship accomplish her undertaking." In that case we held that all the supplies furnished related to the personal needs and convenience of the men, and were not supplies necessary for the employment of the vessel. The issue in the case at bar is an entirely different one. We must first address ourselves to the question of fact, whether or not the evidence in the case proves a custom in the port of Portland for the crews of vessels in the mackerel fishery to pay for goods of the class sued for in this libel. The evidence relating to this custom is very vague and unsatisfactory. We do not think it affirmatively proves such custom, nor do we think that in the case of this particular schooner an agreement has been affirmatively shown between the master and crew that the crew should pay for the supplies. It remains for us to decide whether the milk, green vegetables, canned goods, butter, preserves, pickles, and like supplies for which this suit is brought are necessary to the employment of the vessel, or whether they are mere "luxuries." The evidence tends to show that the master ordered these supplies in good faith; that he decided that they were necessary for the employment of the ship; that he found them requisite and necessary; and that he, with his crew, consumed them. It seems, too, that the supplies were all sold and delivered by the libelant in good faith, and upon the credit of the vessel. There is also evidence on the part of reliable witnesses that these were articles such as a master of a vessel engaged in the merchant service would have ordered and found requisite. The term "luxuries" is an entirely relative term. No such question is raised in the case at bar as was involved when this vessel was last before the court. In that case we held that the supplies were for the personal use of the fishermen, and not for the ship. In this case it is difficult to say that one class of food is any more for the personal benefit of members of the crew than another class of food. The old rule, applied by the English courts, is to the effect that, in the employment of the ship, the master is the agent of the owner; that his situation and duties furnish a presumption that he has authority from the owner to take all measures that may be necessary for rendering the employment of the vessel efficient and beneficial to his employer; that in the performance of this duty, in good faith, his judgment must prevail as to what food may be furnished to the men;

and that such judgment should be conclusive with the courts, unless he is shown to have acted in bad faith or in violation of his duty. The Alexander, Robinson's Admiralty Reports, 356 et seq.; Webster v. Seekamp, 4 Barn. & Ald. 352. We think that this rule has not been changed by the late decisions in the admiralty courts, and that it should not be changed. The rule is of especial force when, as in the case at bar, the master is one of the owners, and is in fact the managing owner, of the vessel. There is no evidence in the case at bar tending to show that the master acted in bad faith or in violation of his duty. He held the supplies in question to be necessary; we find nothing in the case from which we can come to a different conclusion. We think the rule should be, and is, that a competent master is presumed, in the absence of testimony to the contrary, to have provided what is fit and proper for the service in which the vessel is engaged, and to have acted for his owners in doing so. In this view of the case, we hold that the goods in question were supplies necessary for the employment of the vessel, within the meaning of the statute.

A decree may be entered for the balance, due the libelant for supplies furnished to the schooner, of $896.42, to which interest may be added to the 8th of November, 1904, this interest amounting to $158.41. The total decree for the libelant may therefore be for the sum of $1,054.83, with costs.