**In re ELECTRIC POWER & LIGHT CORPORATION et al.**

**No. 281, Docket 21374.**

United States Court of Appeals
Second Circuit.

Argued June 14, 1949

Decided Aug. 9, 1949.

Becker, Berman & Odell, New York City, and Burns, Blake & Rich, Boston, Mass. (Samuel Becker, New York City, and John F. Rich, Boston, Mass., of counsel), for appellants Johnson and Biewend.

Nathan B. Kogan, New York City (Samuel M. Koenigsberg and Victor Brudney, New York City, of counsel), for appellant Sincoff.

Israel Beckhardt, New York City, for appellant Liner.

Roger S. Foster, General Counsel, Harry G. Slater, Chief Counsel, Division of Public Utilities, Washington, D. C., and W. Victor Rodin, Philadelphia, Pa., and Marvin S. Fink, Washington, D. C., for appellee Securities & Exchange Commission.

Cahill, Gordon, Zachry & Reindel, New York City (Daniel James and Robert Krones, New York City, of counsel), for appellee Electric Power & Light Corporation.

Reid & Priest, New York City (James L. Boone and B. H. Dewey, Jr., New York City, of counsel), and Simpson, Thacher & Bartlett, New York City (John F. MacLane and Benjamin C. Milner, New York City, of counsel), for appellee Electric Bond & Share Company.

Before SWAN and CHASE, Circuit Judges, and SMITH, District Judge.

SWAN, Circuit Judge.

These are appeals from an order of the district court entered on April 22, 1949 which granted an application of the Securities and Exchange Commission, pursuant to sections 11(e) and 18(f) of the Public Utility Act of 1935, 15 U.S.C.A. §§ 79K(e), 79r(f), for enforcement of the Commission's order of March 7, 1949 approving a plan of dissolution of Electric Power & Light Corporation (hereafter called Electric). The appellants are two committees of Electric's common stockholders (hereafter referred to respectively as the Johnson committee and the Sincoff committee) and a holder of $7 preferred stock of Electric.

Electric, a Maine corporation organized in 1925, is a registered holding company and a subsidiary of Electric Bond and Share Company (hereafter called Bond and Share), which is also a registered holding company. The plan of dissolution is the culmination of proceedings originally instituted against Bond and Share, Electric and other companies in the Bond and Share system.[1] In August 1942 the Commission issued an order directing that a plan for Electric's dissolution be submit-

---

[1] See Electric Bond and Share Company et al., 7 S.E.C. 391.

ted.[2] After several unsuccessful attempts to formulate a feasible plan, on March 25, 1948 Electric filed with the Commission an amended plan of dissolution under § 11(e) of the Act. Public hearings thereon were held, in which various stockholder groups including the appellants appeared and participated, and on March 1, 1949, the Commission issued its Findings and Opinion, expressing its approval of the plan if certain modifications were made therein.[3] Electric promptly filed the suggested amendments, and on March 7, 1949 the Commission entered its approval order. On the same date, in accordance with Electric's request, it filed in the district court its application for an enforcement order. The appellants and all other interested persons were given an opportunity to file objections and briefs in support thereof, and after oral argument Judge Clancy delivered his opinion approving the plan and granting the Commission's application. The order which these appeals bring before us was thereafter entered.[4]

A detailed description of the capital structure of Electric and of the plan of dissolution is given in the Findings and Opinion of the Commission (Release No. 8889). It is too long to be here repeated. In brief, the plan contains four interdependent parts: Part I provides for the formation of a new holding company, Middle South Utilities, Inc. (hereafter called Middle South), to which Electric will transfer its holdings in certain of its utility subsidiaries in exchange for common stock of Middle South; Part II provides for the settlement of all claims by Electric and its subsidiaries against Bond and Share and its subsidiaries for the sum of $2,200,-000 to be paid to Electric by Bond and Share; Part III provides for the retirement of Electric's preferred stocks by dis-

tribution to the holders thereof of stated amounts of the common stock of Middle South and of United Gas Corporation, the remaining major subsidiary of Electric; Part IV provides for the distribution, following consummation of Parts I, II and III, of the remaining assets of Electric to its common stockholders and option warrant holders, and for the dissolution of Electric. The plan requires the consummation date for Parts I, II and III to be the same and to be fixed by Electric as soon as practicable after the entry of an order approving the plan by a court of competent jurisdiction. The consummation date for Part IV is to be fixed at a date not more than 60 days after the consummation date of the other parts.[5]

The appellants attack the plan on various grounds. The Johnson committee asserts that the court erred in approving the plan without giving it the independent consideration which the Act prescribes, and that the Commission erred in the following respects: (1) In its estimate of the long-range future earnings of Electric's assets; (2) in its allocation of the estimated future earnings as between Electric's preferred and common stockholders and as between common stockholders and warrant holders; (3) in approving the formation of Middle South; and (4) in approving a plan which fails to make adequate provision for the yielding up by Bond and Share of the profits of its misconduct. The Sincoff committee asserts that the court and the Commission erred in approving the compromise settlement set forth in Part II of the plan. Appellant Liner also directs her attack against the compromise settlement.

Before taking up the merits of these contentions, the motions of Electric and of Bond and Share to dismiss the

---

[2] Electric Bond and Share Company, et al., 11 S.E.C. 1146, affirmed sub nom. American Power & Light Co. v. Securities and Exchange Commission, 1 Cir., 141 F.2d 606, affirmed, 329 U.S. 90, 67 S.Ct. 133, 91 L.Ed. 103.

[3] Securities and Exchange Release No. 8889.

[4] A motion to stay consummation of the plan pending determination of the appeals

was denied by this court on May 5, 1949. Thereafter petitions for a stay were presented to the Supreme Court and denied by it. In the Matter of Electric Power & Light Corporation, 337 U.S. 903, 69 S.Ct. 917.

[5] After the court's approval of the plan, May 27, 1949 was fixed as the consummation date for the first three Parts and July 6, 1949 for Part IV.

appeal of appellant Liner demand consideration. The motions are based on the fact, presented by affidavit, that after entry of the enforcement order appealed from this appellant surrendered her preferred stock in Electric for exchange under the plan and thereafter received the securities to which the plan entitled her. The rule is well settled that a litigant who accepts the benefits of a judgment cannot attack it on appeal, unless that part of the judgment attacked is separable from the portion under which benefits were accepted. Allen v. Bank of Angelica, 2 Cir., 34 F.2d 658; Altman v. Shopping Center Building Co., 8 Cir., 82 F.2d 521, 527-528 and cases there cited; In re Denney, 7 Cir., 135 F.2d 184, 186, certiorari denied Denney v. Fort Recovery Banking Co., 320 U.S. 747, 64 S.Ct. 50, 88 L.Ed. 444. Although appellant Liner attacks only Part II of the plan, claiming that the settlement is so inadequate in amount as to be unfair and is illusory because more than one-half of the amount of the settlement is to revert to Bond and Share through the distribution of the stock of Middle South, the settlement of claims is an integral and non-separable part of the single plan under which she has voluntarily accepted benefits. Thereby she has estopped herself from urging that the court's enforcement order should be reversed. Her appeal is dismissed.

The first point urged on the appeal of the Johnson committee is that the district court, "misconceiving its duty, failed to appraise the plan and the Commission's findings with the care and independence which Congress prescribed, and thereby erroneously approved the plan and the findings." This contention is based upon the statement in Judge Clancy's opinion that he had not examined the record but relied upon the summary of the testimony contained in the Commission's opinion.[6] There does not appear to have been any dispute as to the basic facts as summarized in the Commission's opinion. The appellants question the Commission's conclusions based on these facts as to values and relative interests and as to finding the

---

6 Judge Clancy's opinion reads as follows:

"The Court has not read the record of this case or any part of it and finds the actual study of the record unnecessary because no one has asserted that the summation of the testimony that is contained in the opinion of the Commission is not a substantial and a truthful report and summary of the contents of the testimony.

I adopt the language of Judge Nordbye in the Northern States Power case, [In re Northern States Power Co., D.C.], 80 F.Supp. 193. Whatever latitude is given or required of a judge by the decision of the Supreme Court in the case now pending before it, it seems to me as a matter of common sense that any judge has to give great weight to the determination of the Commission, attended as it is by attorneys who, together with the Commission, have made a study of the case. That any judge would not be very much affected by the report after so thoroughgoing a study of any case is, in my judgment, unthinkable.

The fact is that I am expected here on this application to pass on the fairness and equity of the plan. The approval by the Commission is, as I have said of course a factor and a very strong factor. Its strength is fortified by comprehension and consideration of details of the Commission's opinion. The Commission has been charged with having failed to consider certain features of the case or certain facts relevant and material to the case. These charges are not borne out by an examination of the opinion of the Commission. It appears that everything that has been raised here as constituting an issue on the fairness of the plan has been considered by the Commission, even what might be thought minutiæ. The objection really is to the weight the Commission gave the contentions or to whether or not it accepted evidence. Upon the opinion of the Commission and its report of the evidence taken by it, shown by the briefs and arguments to be thorough and truthful, and its findings, and after consideration of the parts and factors that constitute the plan I find that it is fair and equitable; that it is appropriate to effect the provisions of Section 11 of the Act; that, as to the several issues raised by the contenders, I find that the Commission did not err in determining the foreseeable future earnings of the subsidiary companies of Middle South; that the allocations to the various classes of stock of Electric, and the holders of the option warrants are

plan fair and equitable and necessary to effectuate the provisions of § 11(b). In these circumstances we see no reason for the judge to examine the record to determine the evidential facts. The scope of the duty of review imposed on the district court in approving a plan filed under § 11(e) has been authoritatively expounded in Securities and Exchange Commission v. Central Illinois Securities Corporation, 69 S.Ct. 1377. We can discover no failure of the district court to fulfill its statutory duty as so construed by the Supreme Court.

Turning to the alleged errors committed by the Commission, it is urged that the Commission's determination of the foreseeable future earnings of Electric's subsidiaries is in violation of the standards of the Act and without support in the record. This contention is based on the premise that in estimating future earnings the Commission relied wholly on the 1948 budget estimates of earnings of the operating companies. This premise is false. In addition to the 1948 budget estimates, the Commission had before it the financial history of the companies for many years prior to 1948, the testimony of the companies' executives as to the rate of earnings expected to be realized after 1948 and their plans for expansion of the facilities of the operating companies during and after 1948, and the evidence submitted by a witness produced by the Johnson committee as to future earnings prospects. The Commission's opinion shows that all of this evidence was carefully considered and that in the light of all the available evidence it determined that the 1948 budget estimate "represents a reasonable approximation of the future earnings power of Middle South applicable to the capital presently invested in the business." There can be no definite formula for determining future earnings; all relevant factors must be considered. The appellants have not convinced us that the Commission failed to consider them, or that its conclusion is not supported by the evidence. See Public Service Comm. of New York v. Securities and Exch. Comm., 2 Cir., 166 F.2d 784, 788, certiorari denied 334 U.S. 838, 68 S.Ct. 1495, 92 L.Ed. 1763.

The Johnson committee next attacks the allocations of Electric's assets among its security holders. Apparently the allocations as between preferred and common stockholders are not seriously challenged, but the appellants press their objection to the value accorded the option warrants. The holders of option warrants are entitled, without limitation as to time, to receive one share of Electric's common stock upon payment of $25 and the surrender of one warrant. The Supreme Court has held that rights are not matured by operation of the Public Utility Act of 1935 and must be measured on a going-concern basis in order to prevent a windfall to one class of security holders at the expense of another. Otis & Co. v. Securities and Exch. Comm., 323 U.S. 624, 637-638, 65 S.Ct. 483, 89 L.Ed. 511. Consequently the Commission was required to give proper recognition to the value of the perpetual feature of the warrants. In some manner the warrants must be valued. After weighing all the circumstances the Commission concluded that a valuation for a warrant of one-third the value accorded a share of common was "within the permissive limits of fairness." We are not prepared to hold that its judgment was wrong.

The appellants object to the setting up of a new holding company, Middle South, and argue that this produces the very evils that the dissolution of Electric was designed to remedy and that the new structure violates § 11(b) (2) of the Act as much, or almost as much, as did the old. But the differences between the two are

---

fair and equitable; that the formation of Middle South does not violate the Act, and is a wise provision of the plan; and that the settlement of the claims against Bond and Share is fair and equitable. This last I approached with an early contrary reaction. I am convinced

however that the part of the plan that constitutes the settlement of the claim against Electric Bond and Share is fair and equitable.

The injunction asked in the application to the Commission is granted."

obvious. The Commission has 'found that there is a prima facie case for an integrated utility system under the standards of § 11(b) (1) and § 2 (a) (29) (A), 15 U.S. C.A. § 79b(a) (29) (A), and has reserved jurisdiction to determine in the future whether the new holding company system shall be allowed to continue. There was no error in adopting this provisional remedy. As the court said in American Power & Light Co. v. Securities and Exch. Comm., 329 .U.S. 90, at page 118, 67 S.Ct. 133, at ·page 148, 91 .L.Ed. 103: "The Commission is the body which has the statutory duty of considering the possible solutions and choosing that which it considers most appropriate to the effectuation of the policies of the Act."

· The relation of remedy to policy is peculiarly a matter for administrative competence, and the courts may enter this area only if administrative discretion has been exceeded. Phelps Dodge Corp. v. National Labor Relations Board, 313 U.S. 177, 194, 61 S.Ct. 845, 85 L.Ed. 1271, 133 A.L.R. 1217. We do not think it was exceeded.

■■■■■ The most strenuous objections of the appellants relate to the Commission's approval of the settlement of claims embodied in Part II of the plan. These claims fall into several categories: (1) claims arising out of the acquisition by Electric, upon its organization in 1925, from Bond and Share of properties and securities at allegedly excessive costs; (2) claims arising out of allegedly improper or excessive service fees; and (3) miscellaneous claims arising out of transfers of property subsequent to the organization of Electric, profits on the sales of securities, and Bond and Share's alleged failure to invest equity capital in Electric. The Commission had made a thorough examination of these matters in 1942 (11 S.E.C. 1146) and it reviews

them again in its Opinion and Findings of March 1, 1949, twenty pages thereof being devoted to the settlement of claims. (Release No. 8889, pp. 74-93.) That Opinion also considers and answers all the contentions which the appellants now urge upon appeal. They complain that the settlement was not an arm's length bargain. True, but this is not a decisive factor where arm's length bargaining is not an ingredient of the plan. In re North American Light & Power Co., 3 Cir., 170 F.2d 924, 932. The same case, 170 F.2d at page 933, also answers the appellants' contention that the Commission is required to assign a value, or range of values, in dollars, to each separate claim. If there is any "Deep Rock" issue involved—which seems doubtful[7]—we agree with the argument of the Commission's counsel that "it is difficult to see why the victims of unsound speculation in the common stock of Bond and Share should be required to reimburse, after all these years, the victims of unsound speculation in the common stock of Electric." What fairness and equity demand in giving recognition to claims of the character involved in the present case and what amount of cash is a fair settlement is in the first instance for the Commission. As Judge Goodrich remarked in Ladd v. Brickley, 1 Cir., 158 F.2d 212, at page 216: "* * * the studied conclusion of an expert body which has made a prolonged investigation of a subject from the standpoint of the public interest is to be taken seriously. The affirmative recommendation of the Commission is therefore an element to be considered in assessing the wisdom of the settlement."

The appellants have not convinced us that the Commission erred in approving the settlement as an integral part of the plan.

Order affirmed.

[7] Cf. Comstock v. Group of Institutional Investors, 335 U.S. 211, 228, 237, 68 S.Ct. 1454, 92 L.Ed. 1911.