**In re ELECTRIC POWER & LIGHT CORP. et al.**

No. 82, Docket 22766.

United States Court of Appeals Second Circuit.

Argued Dec. 11, 1953.

Decided Feb. 25, 1954.

Cahill, Gordon, Zachry & Reindel, New York City, Daniel James, New York City, of counsel, for Electric Power & Light Corp.

Drinker, Biddle & Reath, Philadelphia, Pa., James S. Regan, New York City, Thomas Reath, John Mulford, Philadelphia, Pa., of counsel, for Drexel Co.

John J. Burns, New York City, Harold B. Dondis, Boston, Mass., Burns, Blake

& Rich, Boston, Mass., for appellants, Christian A. Johnson and Cameron Biewend individually and as a Committee for Holders of the Common Stock of Electric Power & Light Corp.

William H. Timbers, Gen. Counsel, Roger S. Foster, Myron S. Isaacs, Associate Counsel, Securities and Exchange Commission, Washington, D. C., Marvin S. Fink, Elizabeth B. A. Rogers, Washington, D. C., of counsel, for Sec. and Exch. Com.

Before CHASE, Chief Judge, and SWAN and MEDINA, Circuit Judges.

CHASE, Chief Judge.

Electric Power & Light Corporation, to be called Electric, was one of the subsidiary companies of Electric Bond and Share Company, to be called Bond and Share. Both became registered holding companies under the Public Utility Holding Company Act of 1935, 15 U.S.C.A. § 79 et seq., and in appropriate proceedings under that statute plans were filed with the Securities and Exchange Commission for the dissolution of Electric. The one approved by the Commission was enforced by an order of the District Court which we affirmed. In re Electric Power & Light Corporation, 2 Cir., 176 F.2d 687. We will not repeat what was there said respecting the provisions of the plan and add only that jurisdiction was reserved by the Commission to determine what fees and expenses which had been, or would be, incurred with respect to the adoption and enforcement of the plan were reasonable to be allowed and how they should be allocated. The plan, as amended and confirmed, provided that, " * * *, Electric acknowledges the jurisdiction of the Commission to pass upon fees and expenses of parties and persons who have been granted participation herein and their counsel, agents and employees, and agrees to pay such fees and expenses as the Commission shall find it appropriate to pay and as shall have been approved for payment by Electric by order of the Commission or, in the event of judicial review, by final judgment of the court."

When the plan had been consummated, applications were made to the Commission for the allowance of fees well in excess of $1,000,000 and for expenses running to about $70,000. Among such applications was that of appellant Drexel & Company for $100,000.

It was for services Drexel & Company had performed, over a period of about three years, for Bond and Share upon the latter's request for expert financial advice to assist it in protecting its substantial investment in the securities of Electric in connection with the dissolution of that corporation pursuant to Section 11(e) of the Act. There were other applicants for fee allowances on account of services performed for Bond and Share in Electric's dissolution proceedings and for some expenses, as well as an application for allowances by Bond and Share itself. After hearing, the Commission denied them all and the applicants acquiesced in that. It did, however, order Bond and Share to make payments to such applicants in amounts determined by the Commission, the fee of Drexel & Company being reduced to $50,000 although Bond and Share made known its own belief that the $100,000 fee was fair and reasonable and its desire to pay that amount in accordance with its agreement with Drexel & Company to make the payment.

The other appellants are Christian A. Johnson and Cameron Biewend individually and as a committee of the common stockholders of Electric. They applied for an allowance for counsel fees of $35,975 and expenses. The allowance made was $9,500 plus expenses. They had also applied for an allowance of $5,000, for the fees of another firm of attorneys they had employed, and also for a fee of $2,734.28 for an expert accountant, who, himself, applied for additional compensation of $9,454.42 for services performed for the appellants. These last mentioned applications were all denied.

The Commission made a supplemental application to the district court for the approval of its order allowing and disallowing applications for fees and expenses and for a protective injunction. These appellants filed objections. After hearing, the court overruled the objections, confirmed the order of the Commission and enjoined the collection and the payment of fees and expenses except as provided in the order.

The first issue raised by the appeal of Drexel & Company presents an interesting question as to which no direct decision has been called to our attention or found by us. It is whether the Commission has jurisdiction to determine the amount which shall be paid by Bond and Share, not by Electric, to the financial adviser which Bond and Share employed to assist it in these proceedings. Bond and Share has taken the position that, as it is a solvent corporation whose business affairs are conducted by its own management, the amount of the expenses it saw fit to incur in the protection of its interest in the Section 11(e) proceedings for the reorganization of Electric are of right to be determined by itself and what it pays from its own funds in discharge of such obligations is not subject to control by the Commission. That of the Commission is that in a proceeding under Section 11(e) of the Act it is by statute given jurisdiction to supervise all fees and expenses which are paid by a registered holding company whether they be paid by the company reorganized or another registered holding company of which the reorganized one is a subsidiary. The reasoning is that as Electric was a subsidiary of Bond and Share which was required to comply with the provisions of the Act, its dissolution in these proceedings was a step taken, and necessarily taken, in bringing Bond and Share into compliance with the statute. And so, the argument runs, the provisions of Section 11(e) giving the Commission the power, and imposing upon it the duty, to determine whether a plan is fair and equitable to those affected by it gives it jurisdiction to determine what allowances shall be made for fees and expenses. In re Electric Bond & Share Co., D.C.S.D.N.Y., 80 F.Supp. 795. It continues with the assertion that within the group to be considered as persons affected by the plan are not only those with security holdings in the company being reorganized but also those having such holdings in a company of which the reorganized one is a subsidiary. An appreciable number of instances in which it has so acted without objection have been called to our attention.

Furthermore, it has recalled that in American Power & Light Co. v. S. E. C., 325 U.S. 385, 65 S.Ct. 1254, 89 L.Ed. 1683, it was held that under Section 24 (a) a stockholder of Bond and Share was a "person aggrieved" by an order of the Commission in proceedings for the reorganization of a subsidiary of Bond and Share. From this it is said to follow that because the term "persons affected" as used in Section 11(e) must be as broad as "person aggrieved" as used in Section 24(a) it should now be held to include the stockholders of Bond and Share.

█ Though the argument tends toward persuasion, there are other considerations which appear to be so much more weighty as to be controlling. Nowhere in Section 11(e) are fees and expenses, paid in connection with a proceeding thereunder expressly put within the control of the Commission. Indeed, the subject is not mentioned at all. Whatever fees and expenses are to be paid by the reorganized company serve to decrease its assets and persons who have an interest in such assets are, of course, affected by a plan which provides for payments which diminish their amount. Thus it was plainly within the jurisdiction of the Commission to deny in the exercise of sound discretion the application of Drexel & Company, for the allowance of its fee to be paid by Electric for services rendered Bond and Share, and no one questions that. As much is true, of course, in respect to the application of Bond and Share for allowances to be paid by Electric. But what

fees Bond and Share may pay Drexel & Company, will not affect the asset position of Electric in the slightest. They will not affect the stockholders of Electric and so will not affect the stockholders of Bond and Share in any respect by reason of Bond and Share's being a stockholder of Electric, and Electric's being a subsidiary of Bond and Share. True such payment will "affect" the stockholders of Bond and Share but not as a result of the provisions of Electric's plan and only as such stockholders are "affected" by the expenses which Bond and Share incurs in its own business and pays out of its own funds. In other words, the fee to be paid Drexel & Company by Bond and Share is but a business expense of Bond and Share itself like, for instance, what it may have paid in salaries to its own staff for services performed for it in connection with the reorganization of Electric or otherwise to protect its own interests and, not being an obligation to be discharged by Electric directly or indirectly, the amount of it is an irrelevant factor in determining whether Electric's plan is fair and equitable to those persons who are affected by it.

It is also argued that under Section 11 (f) the Commission has jurisdiction to determine the fee to be paid Drexel & Company by Bond and Share, and indeed there are in S. E. C. v. Cogan, 9 Cir., 201 F.2d 78, 81 and in Halstead v. S. E. C., 86 U.S.App.D.C. 352, 182 F.2d 660, 663, expressions broad enough to give support to that contention. They should, however, be read in the light of the issues being there decided. In the Cogan case the fairness of the plan was questioned because it provided for the payment by the reorganized company of a fee to counsel for a stockholder's committee on the ground of an alleged conflict of interest on the part of such attorneys. In the Halstead case the issue was the power of the Commission to prevent the solicitation by a stockholder's committee of contributions to pay the fees of its counsel where it was announced by the committee that it would

ultimately seek payment of the fees solely out of the estate of the company being reorganized. Thus in each of those instances the eventual payment of the fees might reduce what persons affected by the plan would otherwise receive for their interest in the reorganized company.

The opening sentence of subsection (f) begins as follows: "In any proceeding in a court of the United States, whether under this section or otherwise, in which a receiver or trustee is appointed for any registered holding company, or any subsidiary company thereof". Then the subsection provides for the appointment of the Commission as sole trustee or receiver, whether or not a trustee or receiver had previously been appointed, though the Commission may not be appointed "without its express consent", nor may the appointment of "any person other than the Commission" be made without first "notifying the Commission and giving it an opportunity to be heard". Then follow provisions for the approval of the plan by the Commission, after an opportunity for hearing before submission of the plan to the court, "in any such proceeding", and for the proposal of "any such reorganization plan" in the first instance by the Commission or "by any person having a bona fide interest (as defined by the rules and regulations of the Commission) in the reorganization." Finally the subsection ends with this sentence: "The Commission may, by such rules and regulations or order as it may deem necessary or appropriate in the public interest or for the protection of investors or consumers, require that any or all fees, expenses, and remuneration, to whomsoever paid, in connection with any reorganization, dissolution, liquidation, bankruptcy, or receivership of a registered holding company or subsidiary company thereof, in any such proceeding, shall be subject to approval by the Commission."

The appellant contends that the provisions for the approval of fees, expenses and remuneration in this subsection is limited by the words "in any

such proceeding" to those in which a trustee or receiver should be appointed and, since there was no such appointment in this proceeding, the subsection does not here apply. It is to be noticed that subsection (f) is not confined to Section 11 proceedings but applies to any proceeding in any court of the United States in which a trustee or receiver is appointed for any registered holding Company, or any subsidiary thereof. As to that the words "whether under this section or otherwise" leave no doubt whatever. Thus the only words of limitation are "in which a receiver or trustee is appointed for any registered holding company, or any subsidiary thereof," and the phrase "in any such proceeding" found in the last sentence in the subsection can refer only to a proceeding so described by the limiting words. The same words are used earlier in the subsection to make it plain that whenever a trustee or receiver has been appointed for any registered holding company, or its subsidiary, in any proceeding in the federal courts no reorganization plan may emerge from the proceeding and become effective "unless such plan shall have been approved by the Commission" after hearing, if it wants to have one, prior to the submission of the plan to the court. And finally, even where the proceeding had been as closely controlled by the court as it would be when a court appointed trustee or receiver was an active participant in it, such supervision was supplemented by making all fees, expenses and remuneration paid in connection with any reorganization, dissolution, liquidation, bankruptcy or receivership in which the end result was an effective reorganization plan subject to the approval of the Commission, provided it so required by rules, regulations or by order which it might deem necessary or appropriate in the public interest or to protect investors or consumers. It was to make this clear that the provision for Commission approval of fees, expenses and remuneration was put into subsection (f) and had Congress intended to make that provision applicable to proceedings other than the particular kind described in the subsection it, presumably, would have omitted the word "such" from the phrase "in any such proceeding" in the last sentence of the subsection. Now to so construe the provision as though the word "such" were not in the phrase would amount to a broadening as far reaching as the scope of the words "in any proceeding."

■ If we assume, arguendo, that such a construction is permissible, the provision does not even then reach the fee to be paid this appellant unless the words "any and all fees, expenses and remuneration to whomsoever paid, *in connection with*" (emphasis added) include payments which are not made by the company whose attempted reorganization is the object of the proceeding, or which in any way change the financial impact of the plan which is the outcome of the proceedings, whatever that may be, upon persons having a bona fide interest in it. We are not prepared so to construe them for the reasons stated in our discussion of the jurisdiction of the Commission in respect to the control of fees and expenses under subsection (e) and, as the payment of the fee which Bond and Share has agreed to pay the appellant is a business expense of that company and not an obligation of, or one to be imposed upon, Electric, we hold that it is not a fee paid "in connection with" the proceeding for the reorganization of Electric within the meaning of the just quoted phrase as used in subsection (f).

The disallowance in part of the application of Johnson and Biewend and of the Johnson-Biewend Committee for fees and expenses presents a different question. The appellants sought payment out of the estate of Electric and the Commission's jurisdiction is clear.

■ The sole question is whether the Commission's determinations as to whether the fees and expenses were to be allowed out of the estate of Electric and, if so, in what amount are in accord with proper legal standards and are supported by substantial evidence.

Cf. S. E. C. v. Central Illinois Securities Corp., 338 U.S. 96, 69 S.Ct. 1377, 93 L. Ed. 1836. As the Commission has had the advantage of intimate knowledge of the whole proceedings, which is an invaluable guide in determining the value of services and the reasonable need for the incurrence of expenses, its findings, though not conclusive, should be given much weight. Cf. Finn v. Childs, 2 Cir., 181 F.2d 431, 435.

In general the activities of these appellants in the dissolution of Electric consisted of opposing the plan finally adopted. They did not submit a plan of their own, caused no changes in the plan, were unsuccessful at all stages of the proceeding before both the Commission and the courts, and apparently made no contribution as an efficient "watchdog" for the common stockholders. Their objections to the plan were that because of faulty predictions of future values it provided for improper allocations of securities among those whose equities in Electric were recognized and compensated for; and that the Commission improperly evaluated the future earning power of Electric's assets. See In re Electric Power & Light Corporation, 2 Cir., 176 F.2d 687. The primary basis for the objections is found in the testimony of an accountant, P. Harold Peterson, as to these matters before the Commission.

The Commission found that Mr. Peterson was of no aid in the proceedings; that his estimates as to the earning power of the assets of Electric and as to the allocation of securities were based on faulty analysis and fallacious premises; and further that his "services were not essential or even useful to the protection of the common stockholders."

■■ The appellants assert that the contrary is shown by this record in that the predictions of Mr. Peterson have turned out to be more accurate than those upon which the plan was in part based. While that is questioned by the Commission and by Electric, we will assume for present purposes that it is so. Nevertheless, it does not necessarily follow that because time has proved his predictions to have been more accurate than those of others, his testimony was a valuable contribution for which the appellants should be compensated. It is common knowledge that an intelligent estimate may turn out to be less accurate than an uninformed guess, and a comparatively higher ultimate accuracy of a rejected forecast does not necessarily show that it was a contribution of any recognizable value at the time it was made available. Where, as here, the plan for dissolution required a prediction of future values the Commission properly based its decisions on the testimony which at the time seemed to be the most likely to be accurate, by giving effect to the premises upon which the testimony was based and its analytical quality.

■■ That being so, the appellants' reliance upon the alleged accuracy of Mr. Peterson's opinion testimony is futile to show error in the disposition of their applications. It is less than enough to persuade us that the Commission's findings lack the support of substantial evidence.

■ The Commission's determination as to the allowance of fees to the law firms of Burns, Blake & Rich; and Becker, Berman & Odell should also be upheld. The fees of the first mentioned firm were reduced and of the other disallowed. The reduction was made because of lack of success and failure to contribute more substantially to the plan, and while they are not the sole criteria for fixing fees allowable in these cases, a complete lack of success in getting plan compliance with views advanced in complicated and extensive proceedings is certainly good ground for the allowance of only modest fees out of the estate of the reorganized company. A finding to such effect was justifiably made and the fee of Burns, Blake & Rich was accordingly set at a modest level.

■ The fee of Becker, Berman & Odell was completely disallowed because the efforts of that firm were unnecessarily duplicative. In this determination the Commission is well supported. Burns,

Blake & Rich (who retained Becker, Berman & Odell when the proceedings were in the District Court) served at the administrative level and continued to do so in the courts. Some members of that firm were members of the New York Bar, including the senior partner who had an office in New York. They represented the Committee in proceedings in Washington, and the Commission was justified in concluding that there was no good reason why they could not adequately have done so in the court proceedings in New York without the assistance of other counsel.

As to the fee of Drexel & Company the order is reversed for lack of jurisdiction in the Commission and otherwise it is affirmed.