**In the Matter of LIBERTY BAKING CORPORATION, Debtor.**

United States District Court
S. D. New York.
Nov. 10, 1960.

---

Benjamin Wetzler, trustee. Goldwater & Flynn, New York City, for trustee. Oliver T. Cowan, New York City, of counsel. David M. Palley, New York City, for Debenture Holders Protective Committee.

Kiva Berke, New York City, for Securities and Exchange Commission.

Levin & Weintraub, New York City, for debtor and pro se. Benjamin Weintraub, New York City, of counsel. Satterlee, Warfield & Stephens, New York City, for Krug Interests. Francis W. H. Adams, Francis D. Kalosky, New York City, of counsel.

Simpson, Thacher & Bartlett, New York City, for Manufacturers Trust Co., indenture trustee. Henry Landau, New York City, of counsel.

Battle, Fowler, Neaman, Stokes & Kheel, New York City, for so-called Krug Interests. Morris E. Lasker, New York City, of counsel.

Bannister, Stitt, Holloway & Krause, New York City, Gen. Counsel for debtor.

Edward W. Stitt, Jr., New York City, of counsel.

SUGARMAN, District Judge.

There are before the court applications for allowances in a Chapter X, 11 U.S. C.A. § 501 et seq., reorganization of Liberty Baking Corporation, debtor (Liberty).

The petitioners have filed applications as follows:

### For Allowances for Services in the Chapter X Reorganization

| | Compensation Requested | Reimbursement of Disbursements |
|---|---|---|
| Benjamin Wetzler<br>Trustee | $ 75,000.00 | $ 1,362.98 |
| Goldwater & Flynn, Esqs.<br>Attorneys for Trustee | 110,000.00 | 2,268.24 |
| David M. Palley, Esq.<br>Attorney for Debenture Holders<br>    Protective Committee | 60,000.00 | 388.49 |
| Marshall E. Birkins<br>Chairman of Debenture Holders<br>    Protective Committee | 15,000.00 | 110.21 |
| Manufacturers Trust Company<br>Indenture Trustee, Registrar<br>    for Debentures and Warrant Agent | 2,070.45 | 123.32 |
| Simpson, Thacher & Bartlett, Esqs.<br>Attorneys for Indenture Trustee | 5,000.00 | none |
| Levin & Weintraub, Esqs.<br>Attorneys for Debtor | 15,000.00 | none |
| S. D. Leidesdorf & Co.<br>Certified Public Accountants<br>    1957 Audit<br>    1958 Audit | 6,500.00<br>9,280.25 | 2,022.14<br>1,362.34 |

### As Claims for Services Prior to the Chapter X Reorganization and Mainly in the Superseded Chapter XI Arrangement

| | | |
|---|---|---|
| Levin & Weintraub, Esqs.<br>Attorneys for Debtor | $15,000.00 | |
| Manufacturers Trust Company<br>Indenture Trustee | 4,872.48 | |
| Simpson, Thacher & Bartlett, Esqs.<br>Attorneys for Indenture Trustee<br>    Disbursements | 15,000.00<br>36.22 | |
| Bannister, Stitt, Holloway & Krause,<br>    Esqs.<br>General Counsel for Debtor | 9,152.00 | |

Hearings were held on said petitions on June 9, 16, 30 and November 7, 1960. At the June 9 and 16 sessions each claimant was required to submit to interrogation by counsel for the Securities and Exchange Commission (Commission) who probed deeply into the bases urged by each claimant for the allowance sought. Other witnesses also testified. Arrangement was also made for the Commission to examine, as it elected, the original records of each claimant to determine the validity of the claimed time spent, work performed and results accomplished.

The June 30 session was devoted to the Commission's recommendations on the requested allowances which may be summarized as follows:

For Allowances for Services in the
Chapter X Reorganization

|  | Requested Fee and Disbursements | Recommended Fee and Disbursements |
|---|---|---|
| Benjamin Wetzler | $ 75,000.00 | $37,500.00 |
| Trustee | 1,362.98 | 1,300.00 [1] |
| Goldwater & Flynn, Esqs. | 110,000.00 | 57,500.00 |
| Trustee's Counsel | 2,268.24 | 2,200.00 [1] |
| David M. Palley, Esq. | | |
| Attorney for Debenture Holders | 60,000.00 | 17,500.00 |
|    Protective Committee | 388.49 | 388.49 |
| Marshall E. Birkins | | |
| Chairman of Debenture Holders | 15,000.00 | 2,500.00 |
|    Protective Committee | 110.21 | 110.21 |
| Manufacturers Trust Company Indenture Trustee, etc. | 2,070.45 | Combined with recommended allowance for prior services see *infra* claims schedule |
| | 123.32 | 123.32 |
| Simpson, Thacher & Bartlett, Esqs. Attorneys for Indenture Trustee | 5,000.00 | Combined with recommended allowance for prior services see *infra* claims schedule |
| Levin & Weintraub, Esqs. Debtor's Attorneys | 15,000.00 | Combined with recommended allowance for prior services see *infra* claims schedule |
| S. D. Leidesdorf & Co. Certified Public Accountants | | |
| 1957 Audit | { 6,500.00 | 6,500.00 |
| | 2,022.14 | 2,022.14 |
| 1958 Audit | { 9,280.25 | 9,280.25 |
| | 1,362.34 | 1,362.34 |

[1]. As reduced by petitioner.

On Claims for Services Prior to the
Chapter X Reorganization

| | Requested Fee and Disbursements | Recommended Fee and Disbursements |
|---|---|---|
| Levin & Weintraub, Esqs.<br>Debtor's Attorneys | $15,000.00 | $18,500.00<br>for combined services in<br>and prior to Chapter X<br>Reorganization |
| Manufacturers Trust Company<br>Indenture Trustee | 4,695.33 | 4,903.88<br>for combined services in<br>and prior to Chapter X<br>Reorganization |
| | 177.15 | 177.15 |
| Simpson, Thacher & Bartlett, Esqs.<br>Attorneys for Indenture Trustee | 15,000.00 | 13,000.00<br>for combined services in<br>and prior to Chapter X<br>Reorganization |
| | 36.22 | 36.22 |
| Bannister, Stitt, Holloway & Krause,<br>Esqs.<br>General Counsel for Debtor | 9,147.50<br>4.50 | 6,000.00 [2] |

Because of the apparent wide disparity between the requests and the recommendations, an opportunity was afforded petitioners, if they so chose, to interrogate whomever the Commission would certify was responsible for its recommendations, as to the basis for the recommendations, just as the Commission had been, as aforesaid, afforded and availed itself of an interrogation of the petitioners. The trustee, his attorneys and the attorney for the debenture holders protective committee requested such certification and interrogation. The Commission declined to so certify, be examined or produce any documents used in the appraisal of the value of the services. The hearing of November 7 addressed itself to the Commission's refusal to submit anyone to interrogation or to produce any of its records and data upon which its recommendations were predicated.

■ While the opinion of the Commission in recommending allowances in a corporate reorganization is presumably expert and that of a disinterested and skilled agency, it is only an advisory opinion. In matters of this kind judges appreciate the guidance of the Commission.[3] The obvious disparity between the petitioners' and the Commission's evaluation of the services for which allowances are here sought makes it regrettable that the Commission chose to deny the court the benefit of the evidence of how it arrived at its recommendations to be weighed against that supplied by the petitioners.

■ Of course the Commission's recommendations will be considered.[4] Ex-

2. To cover both fee and disbursements.

3. In re Chicago & W. T. Rwys., 7 Cir., 1956, 230 F.2d 364, certiorari denied sub nom. Elward v. Friedman, 1956, 351 U.S. 943, 76 S.Ct. 837, 100 L.Ed. 1469.

4. Conway v. Silesian-American Corp., 2 Cir., 1950, 186 F.2d 201; In re Electric Power & Light Corp., 2 Cir., 1954, 210 F.2d 585.

cept for some statements orally made by counsel for the Commission when he presented its recommendations, there is lacking any testimony as to the weight given by the Commission to such factors as the importance of the matter involved, the standing at the bar of the lawyer-petitioners, the cost of operating their law offices in New York City, the time spent by all petitioners, the results accomplished, and the many other considerations [5] that go into a determination of the value of services. The Commission's appraisals buttressed only by counsel's conclusory oral statements thus remain but an *ipse dixit* bereft of any supporting proof.

■ This court recognizes its duty [6] to set forth its reasons for not accepting the Commission's recommendations where they are not followed.

Liberty was a holding company whose sole asset was the entire capital stock of an operating subsidiary, Bell Bakeries, Inc. (Bell). Bell owned and operated bakeries at Raleigh and Winston-Salem, North Carolina; Daytona Beach, Fort Pierce and St. Petersburg, Florida; Flint, Michigan; Terre Haute, Indiana; and Quincy, Illinois. It also had rented premises for a central office in Jamaica, New York. At the commencement of the proceeding, it also owned a plant in Charlotte, North Carolina, which had formerly been used as a bakery. This plant was sold during the proceeding for a gross sales price of $60,000.

As appears from the accountants' statements introduced as exhibits, the investment of Liberty in Bell was carried on the books of Liberty at $1,743,135.23 but this was adjusted to the underlying equity as shown on the books of Bell at $1,408,308.54. Aside from a very small amount of unsecured creditors, the indebtedness of Liberty consisted of $1,-602,420 aggregate principal amount of 30-Year Subordinated Sinking Fund Debentures and interest accrued thereon.

Bell had never really been a successful operating company and in the years 1952 and 1953 had suffered huge losses as the result of operations and commodity transactions. At the commencement of this proceeding, it was difficult to foresee how any plan of reorganization, either a so-called internal plan or a so-called external plan involving contribution of capital from outside sources or purchase of assets by third parties, could be achieved.

As appears from the exhibits introduced at the hearings, the total gross sales, during the two years and eight months in which the operations of Bell were under the supervision of the trustee, were approximately $30,000,000, an annual average of $11,000,000.

■ While it is true that Bell had a president, who attended to the day-to-day details of operations, nevertheless, under the order of this court, the trustee was charged with the duty of supervising all operations. Although the president of Bell received an annual salary of $22,500, the trustee had difficulty in retaining competent executives since there were three different presidents of Bell during the two years and eight months of operations under the trustee. The size of the operations which the trustee supervised, as shown by gross sales and assets, is of course a factor to be taken into consideration in fixing his compensation. It would seem from counsel's oral statement that the Commission, in making its suggestions as to compensation, gave no consideration to the gross sales volume of Bell.

Immediately prior to the commencement of this proceeding, a plan of arrangement for Bell had been approved in a proceeding under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq. Under this arrangement the unsecured indebtedness of Bell had been reduced to 65% of the principal amount and payment thereof had been extended. However, certain claims against Bell by

---

5. Cf. 12th Canon of Professional Ethics, New York State Bar Association, 29 McKinney's Consol.Laws 768.

6. Finn v. Childs Co., 2 Cir., 1950, 181 F. 2d 431.

George A. Krug, a partnership of which he was a member, and certain corporations affiliated with him (Krug Interests), in the amount of approximately $464,000, had not been finally settled in the Chapter XI arrangement proceeding of Bell. These claims were based upon a claim of $25,000 for services and upon advances made by the Krug Interests to Bell and/or to brokers allegedly on behalf of or for the benefit of Bell in connection with purchases and sales of various commodities.

Pursuant to the provisions of the plan of arrangement, objections thereto had been filed by the Liberty Debenture Holders Protective Committee, by Manufacturers Trust Company, indenture trustee under the indenture securing the Liberty debentures and by John E. Fergus, an individual holder of Liberty debentures.

The Krug Interests were also the holders of approximately $193,000 principal amount of Liberty debentures. The Krug Interests were also the holders of a majority of the outstanding shares of common stock of the debtor and certain members of the Krug family held, as trustees, an aggregate of $183,600 principal amount of Liberty debentures. The trustee and his counsel realized at an early stage in the proceeding that, as a practical matter, the accomplishment of any plan of reorganization necessarily required a disposition of the Krug Interests claims.

Trustee's counsel obtained an order of the court requiring the Krug Interests to file all claims of whatever nature which they had against Liberty. In compliance therewith, the Krug Interests filed claims in this proceeding against Liberty, based upon not only the Liberty debentures but also upon the same claims which they had previously filed in the Bell arrangement proceeding for services and for the advances made to Bell and/or to brokers in connection with the commodity transactions. Thus these claims for advances in connection with the commodity transactions were subjected to the summary jurisdiction of this court and the trustee was enabled to assert objections, setoffs, cross-claims and counterclaims for damages, and demand an accounting against the claimants because of losses allegedly suffered by Bell in said commodity transactions which alleged counterclaims exceeded, in principal amount, the amount of the claims thus filed by the Krug Interests.

It is greatly to the credit of the trustee herein that his analysis of Bell's business and his approach to the problems of Bell made the possibilities of profitable operations sufficiently attractive to other bakery companies to induce offers to be made by such other bakery companies for the stock of Bell or its assets. The trustee's analysis of plant-by-plant operations demonstrated that the operation of the three Florida bakeries and possibly the bakery in Raleigh, North Carolina, could be a quite profitable operation, if divorced from the losing operations of the other bakeries. The trustee coupled this approach with a program of modernization and automation of the Florida plants and of discontinuance of the constantly losing operations in Flint, Michigan, Terre Haute, Indiana and Winston-Salem, North Carolina, plus realization of cash from sales of trucks and other equipment in those plants and attempts to dispose of the plants themselves through sales. During the proceeding, after quite extensive hearings, this court authorized the modernization and automation of the profitable plants and discontinuance of bakery operations at Flint, Terre Haute and Winston-Salem to which the Commission with obvious reluctance acceded.

Undoubtedly, the analysis thus made by the trustee and clearly set forth in his report under Section 167 of the Bankruptcy Act, 11 U.S.C.A. § 567, paid off and was influential in inducing Ward Baking Company (Ward) to submit to the trustee its initial informal offer to acquire the stock of Bell for a consideration to the Liberty debenture holders of $1,400,000, made up by $1,041,573 in proposed new Bell debentures to be guaranteed by Ward and $301,986.04 in cash which was to be placed in escrow until final determination of the Krug Interests

claims. This informal offer by Ward was conditioned on the plants at Flint, Terre Haute and Winston-Salem being spun-off by Bell to Liberty which would have left the trustee with the job of disposing of the spun-off plants. In connection with his attempts to sell the plants at which operations had been discontinued, the trustee had obtained appraisals of said properties and was ultimately successful in inducing Ward to alter its offer and to include the closed plants as assets of Bell, a much more advantageous arrangement from the debtor's point of view. Thus, when the formal offer was received from Ward, it was to acquire all of the stock of Bell in exchange for $1,121,600 principal amount of 5% subordinated debentures of Ward, plus the cash sum of $558,400 of which the sum of $301,986 was to be placed in escrow to await final determination of the Krug Interests claims.

The trustee from very early in the proceedings had made many attempts to obtain offers for the Bell stock or its assets from various other bakery companies and, apparently, having learned of the offer made by Ward through the public announcement issued by the trustee, National Biscuit Company made an offer to acquire the stock of Bell for the sum of $1,500,000 payable in cash. Armed with this offer from National Biscuit Company, the trustee successfully negotiated with Ward and obtained a final offer from Ward to acquire all of the stock of Bell for a total of $1,750,000, consisting of $1,121,600 5% subordinated debentures of Ward and the sum of $628,400 in cash. This final Ward offer, thus negotiated by the trustee, exceeded in principal amount by approximately $350,000 the underlying equity of Liberty as shown on the books of Bell at $1,408,308.54 and as contemplated by Ward's original informal offer. All parties have expressed complete satisfaction with this result.

No party in this proceeding other than the trustee can be said to have been in any way responsible for this extremely successful negotiation, although, of course, in connection with the Ward offer

and the working out of the legal details, the trustee was assisted by his counsel. Aside from the many other valuable services of the trustee, which are set forth in the trustee's application, such as the program of re-equipment of the Florida plants and the realization of approximately $60,000 from sale of equipment at closed plants, the trustee is entitled to full credit for obtaining the Ward offer which became the basis for the plan of reorganization herein. Although, in connection with its suggestions as to compensation, counsel for the Commission did allude to the offers obtained by the trustee from Ward and National Biscuit, this court believes that it gave inadequate weight to these services of the trustee as a factor affecting proper compensation. The Commission either overlooked or woefully underestimated the influence which the trustee's plant-by-plant analysis and program of discontinuance of losing operations and modernization of profitable plants had in bringing about such offers.

Under the plan of reorganization which has now been consummated, the Liberty debenture holders, even after payment of the allowances herein made, will receive more than 90% of the principal amount of their debentures, a rare accomplishment indeed.

The unusual result accomplished by the plan of reorganization based upon the Ward offer is in no small measure due to an agreement between the trustee and the Krug Interests, negotiated and prepared by trustee's counsel, whereby the claims filed by the Krug Interests in the Chapter XI arrangement proceeding of Bell and in this proceeding, in the amount of $464,000, were disallowed and the objections and counterclaims of the trustee were withdrawn. Here again the trustee and his counsel demonstrated excellent trading acumen. This agreement was the culmination of a long investigation by trustee's counsel, including examinations under Section 21, sub. a of the Bankruptcy Act, 11 U.S.C.A. § 44 sub. a, of six brokerage firms and four individuals re-

ported in stenographic minutes of approximately 1,000 pages.

Very difficult questions of law and fact were involved in these Krug Interests claims, which are set forth in the application for allowance by trustee's counsel. The result of the agreement thus negotiated by trustee's counsel was to make the $301,000, which it had previously been proposed be placed in escrow, immediately available for distribution in cash to the Liberty debenture holders. Although, in connection with the Commission's suggestions as to compensation, its counsel did allude to the settlement of the Krug Interests claims, it is manifest that inadequate weight was given to these services of trustee's counsel as a factor in fixing their proper compensation. Their importance was dismissed with the comment that the claims "never got to litigation". This court cannot accept the rather cavalier view of the Commission that the eradication of the Krug Interests claims were unimportant because they achieved the beneficial results for the Liberty debenture holders without litigation. On the contrary, long and expensive litigation and the tying up of $300,000 in cash, not to mention the uncertainty of the outcome, were avoided by skillful negotiation that warrants commensurate compensation.

Keeping in mind that this Chapter X reorganization stemmed from a Chapter XI arrangement [7] we turn to the petitions of those other than the trustee and his counsel who were involved in the proceedings before and during the reorganization.

The attorneys for the debtor, the indenture trustee and its attorneys who rendered services in both the Chapter XI and Chapter X proceedings each request an allowance for the latter services and file a claim for the former.

The chairman of and the attorney for the debenture holders protective committee who rendered services in both the Chapter XI and Chapter X proceedings each request only an allowance in the Chapter X proceedings for all services thus rendered.

The debtor's general counsel who rendered services in and prior to the Chapter XI proceeding assert a claim for such services and the accountants who rendered services only during the Chapter X proceeding ask an allowance therefor.

■ By recommending lump sum allowances for the combined services in the Chapter XI and Chapter X proceedings by the debtor's attorneys, the indenture trustee and its attorney and by recommending an allowance for the debtor's general counsel and for the chairman and attorney for the debenture holders protective committee, the Commission *sub silentio* recognizes that such services are compensable under Subchapter XIII of Chapter X of the Bankruptcy Act. With this the court agrees although it differs as to the value of those services to the estate. Here again except for the oral statement by Commission's counsel the court has no means of knowing how the Commission arrived at its estimates.

In addition to the factors hereinabove mentioned which should be considered, the court believes that the preservation for the benefit of the estate, both before and during the Chapter X proceeding, by the indenture trustee, its attorneys, the debtor's attorneys and general counsel and the chairman and attorney for the debenture holders protective committee, of the debtor's rights against the Krug Interests, armed the trustee with the means of disposing of the Krug Interests claims as hereinabove recounted. The work of these petitioners was not lost in the transition of the proceeding from Chapter XI to Chapter X. Throughout the Chapter X proceeding these petitioners were consulted and heard by the court on every question which arose and they made valuable contributions in the administration of the debtor's affairs and

---

7. S. E. C. v. Liberty Baking Corporation, 2 Cir., 1956, 240 F.2d 511, certiorari denied 1957, 353 U.S. 930, 77 S.Ct. 719, 1 L.Ed.2d 723.

to the result ultimately attained. They merit adequate compensation for these effective efforts on behalf of the debtor.

█ Only to the extent of the allowance to the certified public accountant, in the sums requested, is the Commission's recommendation followed.

Accordingly, the several petitions for allowances and reimbursement of expenses are granted as follows:

| Petitioner | For Services | For Disbursements |
|---|---|---|
| Benjamin Wetzler<br>Trustee | $55,000.00 | $1,300.00 |
| Goldwater & Flynn, Esqs.<br>Trustee's Counsel | 80,000.00 | 2,200.00 |
| David M. Palley, Esq.<br>Attorney for Debenture<br>　　Holders Protective<br>　　Committee | 25,000.00 | 388.49 |
| Marshall E. Birkins<br>Chairman of Debenture<br>　　Holders Protective<br>　　Committee | 3,500.00 | 110.21 |
| Manufacturers Trust Company<br>Indenture Trustee | 5,000.00 | 300.47 |
| Simpson, Thacher &<br>　Bartlett, Esqs.<br>Attorneys for Indenture<br>　Trustee | 15,000.00 | 36.22 |
| Levin & Weintraub, Esqs.<br>Attorneys for Debtor | 22,500.00 | none |
| Bannister, Stitt, Holloway<br>　& Krause, Esqs.<br>Debtor's General Counsel | 7,000.00 | included in allowance for services |
| S. D. Leidesdorf & Co.<br>Certified Public Accountants | 15,780.25 | 3,384.48 |

These allowances include any payments heretofore made on account of services rendered and cover future services necessary to a winding up of the proceeding unless otherwise ordered.

The trustee's objections to the claims of Bannister, Stitt, Holloway & Krause, Manufacturers Trust Company and Levin & Weintraub are overruled.

Settle an order.

Counsel may obtain their exhibits at chambers.