## MONTAGUE *VS.* RICHARDSON AND ANOTHER.

The statute, which exempts from warrant, or execution,"bedding, and household furniture necessary for supporting life,"(Rev. Stat. Tit. 1. Ch. 14. §179,) is a remedial one, passed for a humane purpose, and ought to be liberally expounded, in furtherance of the benevolent objects, for which it was enacted.

The term " necessary" in such act, while it excludes superfluities and articles of luxury, was not intended to denote those articles of furniture only, which are indispensable to the bare subsistence of the debtor and his family,—but to embrace those things, which are requisite in order to enable them to live in a convenient and comfortable manner.

Nor is that term confined to such articles, as were necessary, at the time when it was passed.

In an action of trespass, for taking, upon a process of attachment, household furniture, claimed by the plaintiff to be exempt from execution, the court instructed the jury that said act exempted only such articles of furniture, as are indispensably requisite for supporting the lives of the debtor's family. Held that this construction of the term "necessary," was too rigid, and that a new trial should be granted.

TRESPASS against John Richardson and Benjamin Webster, for taking and carrying away certain articles of household furniture, the property of the plaintiff.

The cause was tried before the superior court for the county of New Haven, at the term holden in October, 1855.

On the trial, it was admitted that at the time when the trespasses, alleged in the declaration, were committed, Benjamin Webster, one of the defendants, was a constable of the town of New Haven, and as such had in his possession, for service, a bill in equity, in which the defendant Richardson and others were plaintiffs, and commenced by a process of attachment, and that, with said process, he entered the dwelling-house of the plaintiff, and took and removed therefrom, the following articles of household furniture: two sofas, two mahogany tables, one cherry table, two dress-stands with glass, one writing desk with the contents, eight cushioned chairs, two divan stools, one bedstead, one Brussels carpet, two rocking chairs, one small mahogany stand, one dress stand, six cane-bottom chairs, one washstand with pitcher and bowl, six flag-bottom chairs, seven silver tea-spoons, three table-spoons, one butter knife, six mantel ornaments, two plated tea-pots, one glass pitcher, one glass lampshade, one egg shell, one lot of shells, one work basket, two tea-salvers, one bed spread, two looking-glasses, two portraits, one picture, one duster, five books, two small lamp-mats, two lamp-mats, eight table-cloths, twenty-three pieces of linens, one piece of stair carpeting, two hall carpets, one chamber carpet, one sitting-room carpet, one stove and pipe, one looking-glass, one piece of zinc.

Said articles were subsequently, within a few days, released by a bond, pursuant to the statute, and said process was duly returned to court.

It was proved and admitted, that the plaintiff's house contained a keeping-room, usually occupied by the family as a sitting-room, a parlor, a kitchen, a bed room, and several chambers, all of which contained appropriate furniture, and that, at the time of said alleged trespasses, the plaintiff had in his kitchen an apparatus called a Culver's half range, with which the cooking for the family was done; and that, in the said sitting-room, he had a stove which was then in use, and was then taken away by said Webster and said Richardson;

and that, with the exception of this stove, the plaintiff had no stove at all in his house, unless the said range was a stove, within the meaning of the statute specifying property exempt from execution. And in reference to said range the defendant introduced evidence tending to prove, and claimed that he had proved, that it was not a stove, but was merely a cooking apparatus fastened into the fire-place of the kitchen by masonry, and was not capable of giving comfortable warmth to the kitchen, and was not capable of imparting any warmth to any other part of the house; but the plaintiff introduced evidence tending to prove, and claimed that he had proved, that said apparatus was not then fastened into said fire-place, but was standing out in the kitchen, and was a stove, to all intents and purposes, and was at all events, even if fastened as aforesaid, capable of being brought out, and had been frequently so brought out into the room, and when so brought out was like a cooking stove, capable of imparting warmth to the room and of being used as a stove, and was therefore a stove within the meaning of said statute. And the plaintiff introduced evidence tending to prove, and claimed that he had proved, that the defendant stripped the plaintiff's house of all its furniture except a few chairs, insufficient to seat the plaintiff's family; a small table, insufficient in size to enable all the family to sit together around it; a few knives and forks, and a few other articles of furniture; and that before and at the time of said alleged trespasses, the furniture of said house was sufficient and suitable for the plaintiff's condition. The defendants, in committing said alleged trespasses, took a large quantity of such furniture as is, in common parlance, called necessary household furniture, and so reduced the quantity and limited the descriptions of the plaintiff's furniture, that it would have been impossible for the plaintiff, or his family, to live without great privation and distress with so little furniture as the defendants left; and that the health of the plaintiff's wife and grand child was injured by the removal of said

Montague *v.* Richardson and another.

stove, and that the health of the plaintiff and his family would have been necessarily impaired by their continuing to live in the destitute condition, in which the defendants left them with respect to furniture, and that in that condition, the plaintiff and his family could not enjoy, at any time, the ordinary comforts of life. And thereupon the plaintiff requested the court to charge the jury, that, in determining what was household furniture necessary for supporting life, they were not to restrict that term to that furniture, without which a man's existence could not be preserved, but that they must give the term a liberal interpretation, and must consider it as embracing all such furniture as would be necessary to support life in its proper condition of comfort and health, and that, in applying the term to the present case, it would be their duty to consider the age, habits of life, and condition in life of the plaintiff and of his family, and that, inasmuch as the meaning of the term would vary, in order to adapt itself to different cases, the term, when applied to persons in the condition in life in which the plaintiff claimed that he and his family were, would embrace articles of furniture which would not be embraced in the same term, when applied to persons accustomed to poverty and destitution.

All these claims in relation to the household furniture were denied by the defendant, who introduced evidence tending to prove, and claimed he had proved, that there was left untouched by said attachment much more than was sufficient for the support of life, within the meaning of the statute, with sufficient chairs, tables, table furniture and chimney furniture, and other articles of household furniture more than sufficient, as he claimed to have proved, for the requirements of the statute.

The plaintiff claimed that the several articles of household furniture, and the stove so taken, were exempt from execution; that the letters, books, and other articles not specified, were not liable to attachment, and that the defendants had been guilty of a wanton and unjustifiable trespass, attended

with such circumstances of aggravation, as entitled the plaintiff to exemplary damages.

Much evidence was also introduced by the plaintiff, for the purpose of showing that other articles had been taken, besides those specified in the return of the officer, and among them the letters, papers, and account books of the plaintiff, and that, in praying out, and procuring the service of said process, said Richardson was actuated by improper and malicious motives, and that said process was colorable, his chief design being to get possession of said letters, papers, and books of the plaintiff. Various questions, as to the admissibility of evidence, were raised during the course of the trial, but as no opinion was expressed by the court, upon these questions, a further statement of the facts and evidence in the case is unnecessary.

The court instructed the jury as follows:

" Your attention will naturally be directed in the first place, to the enquiry, whether any of the articles were exempt, by force of the statute in relation to household furniture, or by force of any of the specific exemptions of the statute. I am not aware, that any article is claimed to have been specifically exempt, except the stove.

" 1. As to the articles of household furniture. The language of the statute is, " bedding and household furniture necessary for supporting life," and it is a question of fact for you, whether all, or any, and which, of the articles of furniture taken, were exempt, by force of this statute. But it is proper, and I deem it my duty to make such suggestion to you in relation to the construction of the statute, as will aid you in coming to a correct conclusion.

" This statute, like all others, is to be construed according to the apparent intention of the legislature, which enacted it, gathered from the language used in connection with the subject, and purpose of the law. It is an ancient statute. The language was originally, " necessary for upholding life ;" it was modified in 1821, to " necessary for supporting life," but

the modification does not appear to alter, essentially, the meaning.    You will look first, at the language.    This is general; necessary for supporting life.    It is necessary, that is, essential, indispensably requisite for supporting the lives of the family, not according to any social condition in life, nor to any social relation or intercourse with others, but necessary to support the lives of the family, as a family, irrespective of their social conditions or relations, or intercourse with others.    The term " necessaries" in law, used in other cases, where the duty of supporting a person or persons, is thrown by law, upon another, as the support of a child, or wife, or relative, has relation to the social condition of the person; but the words supporting life, in this statute, are words of limitation, and confine the exemptions to such articles as are necessary to the support of the lives of the family.    I make these suggestions, because the distinction is not always drawn; and there is some confusion in the public mind, in relation to the extent of the exemption, in consequence of the failure to make the distinction.

"It is proper, also, that you should look at the subject and purpose of the law.    The subject is an exemption from the great cardinal rule of honesty, which the founders of the commonwealth adopted, that every man should be just, that his property should be subject to the payment of his just debts, and that these should be paid, before he should be generous to himself, or his family.    The purpose was to reserve, for the use of the family, however, such articles as were necessary to sustain their lives, from regard for them; for the debtor himself might then have been immured in a prison. It is further proper, that you should look at the state of things when the law was passed,—at the fact that many articles of luxury, convenience and comfort, and necessary in a social point of view, were then unknown, that you should look at the statutes of other states, to which allusion has been made, so far as they show the general sentiment of the age, and to the cotemporaneous and continual practical construc-

tion which has been given to the statute.    The great question is not what the law ought to be in the present state of society, and of public sentiment; what may be your opinion or mine, but what was the intention of the legislators who enacted it.    If it is not now in conformity to the spirit of the age, it is not our business to make it so by construction; but for the legislature to amend and alter it, and make it conform to the spirit.

" 2.  As to the stove.    The law specifically exempts one stove and pipe.    It is admitted that one was taken, and claimed that one was left.    It is for you to say, whether the range was a stove within the spirit of the law."

The jury, having rendered a verdict of fifty dollars damages against the defendant, Richardson, the plaintiff moved for a new trial.

*Buel* and *Peck* and *Harrison*, in support of the motion.

1.  In instructing the jury as to the construction of the statute exempting bedding and household furniture "necessary for supporting life," the court erred and mistook the law, and misled the jury thereby.

2.  The construction, given by the court is subversive of the object, design, and spirit of the statute, and of the humane principle that prompted its enactment, and contrary to the interpretation and decision of our own courts, and those of other states upon similar statutes.    *Crocker* v. *Spencer*, 2 Chip., 68.  *Leavitt* v. *Metcalf*, 2 Verm. R., 342.  *Hart* v. *Hyde*, 5 Verm. R., 328.  *Atwood* v. *De Forest*, 19 Conn. R., 513.  *Davlin* v. *Stone*, 4 Cush. R., 359. 10 Met., 506.  10 N. H., 356. 10 Verm. R., 433.    4 Conn. R., 450.    The statute is a remedial one, and should receive a liberal and beneficial construction in order to effectuate the intention of the legislature.  5 Conn. R., 122.    6 Conn. R., 110–114.    19 Conn. R., 299.

*Baldwin* and *Blackman*, contra.

The jury were properly informed, that it was a question of *fact* for them, whether all or any, and which of the articles taken was exempt, as " necessary for supporting the lives of

the plaintiff's family," as a family, irrespective of their social condition or relations, or intercourse with others. 4 Conn. R., 453.

The word " necessary," alone, without words of qualification, was not, at any period, deemed sufficiently expressive of the meaning of the legislature. It was susceptible of a broader interpretation than would comport with the policy of the law. It might be construed to mean necessary for the comfort, for the convenience, for the maintenance of the social position, or ordinary habits of life of the debtor.

2. But the law, subjecting all the property of the debtor to the payment of his debts, was designed not only to secure justice to the creditors, in each particular case, but to have a continuing and salutary operation, as a restraint upon fraudulent, or improvident, debtors. The legislature, therefore, to prevent misconstruction, and to render it clear that they meant to use the word "necessary" in its most rigid and restricted sense, added the qualifying words " necessary for upholding life;" thus using language, applicable alike to all debtors in default, irrespective of any diversity in their habits of life. This is inferable, not only from the language originally used and carefully preserved, but from the character of the times when the act was passed, the modes of life, and the rigid sentiments in regard to the sacred obligation of contracts and the duty of the government, then prevailing. 19 Conn. R., 513.

3. This construction is also in accordance with the provisions of similar statutes in other states, and it is believed, with the practical interpretation of the law, from the period of its enactment.

The evidence was submitted to the jury, with these suggestions, and they expressly found that no articles were taken which were necessary "to support the lives of the family, as a family, irrespective of their social condition or relations, or intercourse with others."

STORRS, J. The principal question, in this case, involves the correctness of the construction given by the court below

to the statute which, among other property, exempts from warrant, or execution, "bedding, and household furniture necessary for supporting life;" Rev. Stat. Ch. 1, § 179, p. 112. The jury were instructed that this provision exempts only such articles of furniture, as are indispensably requisite for supporting the lives of the debtor's family. We are of opinion that this is too rigid a construction of the phrase, "necessary for supporting life;" or, rather, of the word "necessary," contained in it, which would have given to the provision the same meaning, if the succeeding words "for supporting life" had been omitted; since it is obvious that the word necessary would imply a necessity for some particular purpose, and that could only be the supporting of life. It was accordingly assumed in *Davlin* v. *Stone*, 4 Cush. R., 361, that the word necessary, which was used in the Massachusetts statute, exempting, after an enumeration of some specific articles, "other household furniture necessary for the debtor and his family, not exceeding fifty dollars in value," without expressing the purpose for which such necessity should exist, implied that that purpose was the support of the debtor's family. The enquiry before us is, as to the true sense in which the word "necessary" was used in the law now in question. On this point we derive no aid from the phraseology of the former statutes, in relation to the exemption of household furniture from legal process. They differ from the present law in their arrangement; but otherwise they are all alike, excepting that for the word, upholding, which is used in the ancient statute, the synonymous word, supporting, is substituted. We think that the term "necessary" was not intended to denote those articles of furniture only, which are indispensable to the bare subsistence of the persons for whose benefit the law was designed, the debtor and his family. According to such a limited construction, it would exclude many things which universal usage and the common understanding of that word, in reference to this subject, have pronounced to be necessary articles of household furniture; and would indeed protect merely those rude

contrivances which are used only in a savage state. The word was obviously used in a larger sense; it was intended to embrace those things which are requisite, in order to enable the debtor not merely to live, but to live in a convenient, and comfortable manner. It however excludes superfluities and articles of luxury, fancy and ornament, as remarked by Ch. J. Shaw, in 4 Cush. R., 361; " it was not used in its most rigid sense, as something indispensable, and without which the debtor cannot live, but something so essential as to be regarded among the necessaries, as contradistinguished from luxuries." The word " necessary" has properly, and frequently, in common parlance, a limited and qualified signification, and indicates means for the accomplishment of a purpose, which are reasonably requisite and proper for that purpose under the circumstances of the case, rather than those without which it would be absolutely impossible for it to be accomplished. And such is the sense in which it would be commonly used and understood in our community, in speaking of furniture necessary for supporting life, or necessary for house-keeping, or necessary for a family. In this sense the word was, in our opinion, used in the act in question, as indeed it is in many others. The exposition of this term by Ch. J. Marshall, in reference to the meaning of it in a particular clause of the Constitution of the United States, is applicable to this act. He says; " does it always import an absolute physical necessity, so strong, that one thing, to which another may be termed necessary, cannot exist without that other? We think it does not. If reference be had to its use in the common affairs of the world, or in approved authors, we find that it frequently imports no more than that one thing is convenient or useful, or essential to another. To employ the means necessary to an end, is generally understood as employing any means calculated to produce the end, and not as being confined to those single means, without which the end would be entirely unattainable. Such is the character of human language, that no word conveys to the

mind, in all situations, one single definite idea; and nothing is more common than to use words in a figurative sense. Almost all compositions contain words, which, taken in their rigorous sense, would convey a meaning different from that which is obviously intended. It is essential to just construction, that many words which import something excessive, should be understood in a more mitigated sense, in that sense which common usage justifies. The word 'necessary' is of this description. It has not a fixed character peculiar to itself. It admits of all degrees of comparison; and is often connected with other words which increase, or diminish, the impression the mind receives of the urgency it imports. A thing may be necessary, very necessary, absolutely or indispensably necessary. To no mind would the same idea be conveyed, by these several phrases. * * * This word, then, like others, is used in various senses; and in its construction, the subject, the context, the intention of the person using them, are all to be taken into view." *Mc Culloch* v. *Maryland*, 4 Wheat. R., 316.

The statute in question is a remedial one, and being passed for a humane purpose, ought to be liberally expounded in favor of humanity, and in furtherance of the benevolent objects, for which it was enacted. The interest of creditors does not, as has been claimed, require a greater strictness in its construction, than the one we have adopted, on the ground that they would otherwise be seriously affected in regard to the collection of their debts. The law was prompted by an enlightened view to the interest of creditors, as well as of debtors, and in our opinion our construction will advance the interests of both, while the narrow and rigid construction contended for would not operate generally for the benefit of either. A reference to the decisions of the courts, in the other states, upon similar statutes, some of which are, in their terms, like our own, will show that they have uniformly favored the same liberal rule of construction which we have adopted. *Crocker* v. *Spencer*, 2 Chip., 68. *Leavitt* v. *Met-*

*calf,* 2 Verm., 342.  *Freeman* v. *Carpenter,* 10 Verm., 435. *Richardson* v. *Buswell,* 10 Metc., 506.  *Davlin* v. *Stone,* 4 Cush., 359.  *Peverly* v. *Sayles,* 10 N. Hamp., 356.

In regard to the kind, quantity and quality of the articles of furniture which would be exempted in particular cases under this law, it is obviously impracticable to prescribe, or specify them.   Each case, as it arises, will depend on its own peculiar circumstances, and  present the question, as one of fact, for the jury to determine, whether the exemption exists, according to the exposition of the law which we have given.

We do not concur in the suggestion that this law exempts only such articles, as were necessary at the time when it was passed.   Some articles of furniture, greatly conducive to convenience and comfort, and proper for every family, have been since invented, and others which would then have been deemed superfluous, have now ceased to be so, and are properly considered to be necessary.   The enquiry is, whether the article in question was necessary when it was levied on by the creditor.

On this point there should be a new trial.

The question, whether the apparatus, called a range, was a stove, was, on the conflicting claims of the parties, as to its character, one of fact, and as such properly submitted to the jury.

The question of evidence, which has been argued before us, is presented so unintelligibly on this motion, that an examination of it would  probably serve no useful purpose, and, as it is not necessary, we do not attempt to express any opinion upon it.

In this opinion the other Judges, ELLSWORTH and HIN-MAN, concurred.

New trial to be granted.