In the Matter of David WEAVER, Bankrupt.

No. H–9571.

United States District Court, D. Connecticut.

Feb. 3, 1972.

Neal Ossen, Hartford, Conn., for petitioner.

Ralph Loew, West Haven, Conn., for respondent.

## MEMORANDUM OF DECISION ON PETITION FOR REVIEW

BLUMENFELD, Chief Judge.

The bankrupt petitions for review of an order by the referee in bankruptcy that he turn over his color television set to the trustee in bankruptcy. The question raised by the petition is whether a color television set owned by a bankrupt is exempt from the claims of his creditors.

Under Section 6 of the Federal Bankruptcy Act, 11 U.S.C. § 24, bankrupts are entitled to the exemptions prescribed by state laws. The applicable Connecticut exemption statute, Conn.Gen.Stats. § 52–352, provides:

"The following property shall be exempt and not liable to be taken by warrant, attachment or execution: Of the property of any one person, his necessary apparel, bedding and household furniture, any arms and military equipment, uniforms or musical instruments owned by any member of the militia for military purposes, any pension moneys received from the United States while in the hands of the pensioner, implements of the debtor's trade, his library not exceeding five hundred dollars in value, one cow not exceeding ane hundred and fifty dollars in value, any number of sheep not exceeding ten nor exceeding in all one hundred and fifty dollars in value, two swine and poultry not exceeding twenty-five dollars in value; of the property of any one person having a wife or family, two tons of coal, two hundred pounds of wheat flour, two cords of wood, two tons of hay, five bushels each of potatoes and turnips, ten bushels each of Indian corn and rye or the meal or flour manufactured therefrom; one boat, owned by one person, and used by him in the business of planting or taking oysters or clams, or taking shad, together with the sails, tackle, rigging and implements used in such business, not exceeding in value two hundred dollars; one sewing machine, being the property of any one person using it or having a family."

Beginning with an accepted construction that a television set is household furniture within the meaning of § 52–352,[1] the referee held that a color television set did not fall within the scope of "necessary" household furniture.

The petitioner first attacks the referee's application of the word "necessary" in the phrase "necessary apparel, bedding and household furniture" to modify "household furniture." In the context of the entire statute, the phrase "necessary apparel, bedding and household furniture" describes one of several categories of the property of a debtor beyond the reach of creditors. Common English usage dictates the conclusion that the term "necessary" modifies bedding and household furniture as well as apparel. The well-established rule of construction, known as ejusdem generis, dictates the same conclusion. Under this rule, where general words follow an enumeration of persons or things described by words of a specific meaning, such general words are construed to ap-

1. Neither the petitioner nor the trustee contend that a television set is not household furniture within the meaning of § 52–352. Although the referee did not expressly find that a television set constituted household furniture, he did state that the bankruptcy court has "consistently allowed black and white television an exemption as household furniture . . . ."

ply only to persons or things of the same kind or class as those specifically mentioned. Applying this rule to the phrase at issue, the term "necessary" must be regarded as describing household furniture. In short, § 52–352 exempts only "necessary" household furniture.

The petitioner also challenges the referee's holding that a color television set is not "necessary" household furniture. Unfortunately, § 52–352 does not carry its own definition of the term "necessary." Two early Connecticut Supreme Court decisions, Montague v. Richardson, 24 Conn. 338 (1856), and Hitchcock v. Holmes, 43 Conn. 528 (1876), do shed some light on this matter. In both these decisions, the court was called upon to interpret the Connecticut bankruptcy exemption statute as it existed at an earlier time. The language of that statute somewhat more stringently exempted a debtor's "necessary apparel, bedding and household furniture, *necessary for supporting life.*" (Emphasis added). Nonetheless, in Montague v. Richardson, *supra* 24 Conn. at 345, the court defined the term "necessary" broadly:

"We think that the term 'necessary' was not intended to denote those articles of furniture only, which are indispensable to the bare subsistence of the persons for whose benefit it was designed, the debtor . . . and his family. . . . The word was obviously used in a larger sense; it was intended to embrace those things which are requisite, in order to enable the debtor not merely to live, but to live in a convenient and comfortable manner. It however excludes superfluities and articles of luxury, fancy and ornament."

Similarly in Hitchcock v. Holmes, *supra,* 43 Conn. at 530, the court stated:

"No fixed or precise definition can be given to the word *necessary* as used in the statute; the facts in each case must control its interpretation. Of course it is susceptible of being con-

fined within very narrow limits; for we know, as a matter of fact, that many families exist, although they are enabled to use very few of the articles to be found in an ordinary household, and these in their rudest forms. But a proper regard for plain legislative intent requires us to use it in a broader, more liberal and more humane sense; to pass beyond what is strictly indispensable, and include articles which to the common understanding suggest ideas of comfort and convenience. But, having done this, the obligation is upon us to exclude all superfluities, and articles of luxury and ornament."

The court went on to hold that a clock valued at $50 was not exempt as "household furniture necessary for supporting life" on the ground that clocks, "marking time with sufficient accuracy for the ordinary purpose of the household, can be obtained for a comparatively small amount of money." *Id.* at 531. The court also held that lace curtains valued at $160 [2] were not exempt as "household furniture necessary for supporting life" because they "serve no strictly useful purpose" and "there are many families of refinement, taste, and culture, living in homes of comfort and convenience in which these articles are not to be found." *Id.* at 530.

Applying the principles enunciated in the aforementioned decisions, the referee concluded that, although the bankruptcy court allowed the exemption of black and white television sets as household furniture "reasonably necessary for the care, comfort and convenience of the Bankrupt," "color television at the present state of the art is a luxury" since "color sets are several times as costly as black and white sets which receive the same sound and picture."

The value of an object may sometimes be a factor to be considered in determining whether it is an object of luxury or an object of comfort, convenience and utility. Hitchcock v.

2. The value of a dollar was somewhat greater in 1876 than it is today.

Holmes, *supra*, 43 Conn. at 530. Television sets, however, both color and black and white, are available in a wide range of prices. The price of a set depends not only on whether it is capable of receiving color pictures as well as black and white pictures, but also on the type of set involved, i. e., portable or console, and screen size. While a color set is generally more expensive than a black and white set which is comparable to it in all respects but the ability to receive color pictures, it is possible to purchase certain color sets at a cost which is the same as or less expensive than certain black and white sets. In the instant case, the record does not disclose what the original cost of the color television set at issue was, but it does disclose that the set was recently appraised at $150, which is within the range of the purchase price of a black and white set. Hence, it cannot be said that the set at issue is a luxury simply on the basis of its value.

■ In any event, the value of a color television set is only one factor to be considered. Whether a piece of household furniture is exempt is not tested solely by its dollar value. More important, or at least equally important, is whether in "common understanding" it is regarded as an object of luxury or an object of comfort, convenience and utility. See Hitchcock v. Holmes, *supra*, 43 Conn. at 530. In this regard, it must be borne in mind that luxury is a relative term. Cf. Mary F. Chisholm, D.C., 133 F. 598, 600 (1904). What is viewed as a luxury at one time may be viewed as a comfort or convenience at another. We live in a time of rapid changes.

Although television broadcasts in color and color television sets were once rare, this is no longer the case. Almost all networks broadcast in color, and the vast majority of local television stations have color equipment which enables them to transmit in color.[3] Likewise, today nearly one half of all households which have a television set have a color set, and in 1971 sales of color sets exceeded sales of black and white sets.[4] Accordingly, a color television set can no longer be regarded non-exempt as a luxury per se.

 In view of the foregoing, the color television set of the bankrupt is entitled to an exemption as necessary household furniture under § 52–352 of the Connecticut General Statutes. The petition for review is granted, and the order of the referee is reversed.

So ordered.

---

3. Television Fact Book, No. 41, at 43a–52a (1971–72 ed.) (published by Television Digest, Inc.).

4. See *id.* at 76a–79a; Television Digest, Vol. 11, No. 50, at 7–8 (Dec. 13, 1971).