**Roger diLEO, Appellant,**

v.

**Richard GREENFIELD, et al., Appellees.**

**No. 563, Docket 75–7316.**

United States Court of Appeals,
Second Circuit.

Argued May 13, 1976.

Decided Sept. 1, 1976.

Karl Fleischmann, Hartford, Conn. (Fleischmann & Sherbacow, Hartford, Conn., on the brief), for appellant.

Leo Rosen, Hartford, Conn., for appellees.

Before LUMBARD and TIMBERS, Circuit Judges, and NEWMAN, District Judge.*

LUMBARD, Circuit Judge:

Roger diLeo, formerly a teacher of French and Spanish in a Bloomfield, Connecticut junior high school, appeals from an order of the District Court of Connecticut that upheld his dismissal by the Bloomfield Board of Education. The district court found that notification to diLeo of the basis for his termination had cured any vagueness in the provisions of the statute under which he had been dismissed. We hold that the statute at issue is not unconstitutionally vague as applied and therefore affirm the result reached by the district court.

Prior to June 1973, diLeo taught in the Bloomfield school system for longer than three years and thereby acquired tenure under Conn.Gen.Stat. § 10–151. As a tenured teacher, diLeo could be terminated only after opportunity for a hearing at which the Board of Education had to prove that he had demonstrated:

"(1) inefficiency or incompetence;

(2) insubordination against reasonable rules of the board of education;

(3) moral misconduct;

(4) disability, as shown by competent medical evidence;

(5) elimination of the position to which the teacher was appointed, if no other position exists to which he may be appointed if qualified; or

(6) other due and sufficient cause . . . ."

Conn.Gen.Stat. § 10–151(b).

On June 21 and July 2, 1973, the Board of Education notified diLeo that his employment would be terminated because he had exhibited "improper conduct towards students on several occasions" sufficient to constitute "other due and sufficient cause" under the statute. After a hearing at which parents testified to diLeo's alleged misconduct, the Board of Education officially terminated appellant's employment.

Thereafter, on September 11, 1973, diLeo instituted a civil rights action against appellees under 42 U.S.C. § 1983. He claimed that § 10–151(b)(6) was unconstitutionally vague, that the notification he had received on June 21 and July 2 failed to give him sufficient notice of the charges against him, and that the hearing that preceded his dismissal had been tainted by hearsay. On motion for summary judgment, the district court found that hearsay had been admitted in violation of diLeo's right to due process and ordered a new hearing. The court did not, at that time, address appellant's other claims or order his reinstatement.

New hearings were held May 20 and June 5, 1974.[1] The Superintendent of Schools testified that he had received numerous complaints concerning appellant's classroom conduct and apparent lack of concern for the education or emotions of his pupils. Delegations of students had visited the Superintendent to inform him of the deteriorating conditions in appellant's classes and sixty-two students had signed a petition, which was submitted to the principal of the school, stating that they were not learning anything from diLeo. Meetings between school administrators and appellant failed to ameliorate the situation. One student testified that after his mother had complained to school administrators, diLeo derided him in front of his classmates and

---

* Sitting by Designation.

1. The recital of the evidence adduced at the school board hearings is taken from the district court's opinion.

on other occasions refused to assist the student with classwork. There was also testimony that on several occasions appellant made comments with sexual connotations to students, thereby embarrassing students before their peers. Further evidence revealed that diLeo had not completed a lesson plan book and consistently refused to answer students' questions or to explain ambiguous textbook material. DiLeo did not testify at the hearing and refused the offer of a continuance to prepare a response.

On the basis of this testimony, the Board of Education, by decision of June 18, 1974, again terminated appellant. Appellant then renewed his motion for summary judgment of the claim that the statute on which appellees had based the dismissal was so vague that he could not have known the standard to which his conduct had to conform. In an order of February 4, 1975, the district court rejected this contention. The court held that while § 10–151(b)(6) standing alone is vague, the prehearing notification received by diLeo sufficiently informed him of the acts that served as the basis for his dismissal so that he could prepare a defense at the hearing.

The court further found that the Board of Education had improperly deprived appellant of his teaching position for the year between the first and second hearings. After a hearing on damages, the court entered judgment of $6327 for diLeo. This amount was paid by the Board of Education and retained in a separate bank account by diLeo's attorney. DiLeo then entered this appeal from the holding that § 10–151(b)(6) was not unconstitutionally vague.

### Appealability

■ Appellees claim that acceptance of the damage awarded by the district court constitutes satisfaction of a judgment based on all diLeo's claims and thereby precludes an appeal from that judgment. Appellees maintain that payment of the judgment was made only in the expectation that a satisfaction of judgment would be forthcoming from appellant and that, although no document of satisfaction was received,

appellant is now estopped from appealing those portions of the judgment decided against him. We hold that the claim for which diLeo recovered damages is so unrelated to his claim of unconstitutional vagueness that he is not estopped from bringing this appeal.

DiLeo received judgment based on one year's salary because the Board of Education terminated him after a hearing that was tainted by hearsay. He was not reinstated pending a rehearing that comported with due process. The Board of Education did not appeal from this determination and thus the question of whether diLeo should have been retained as a teacher for the 1973–1974 school year has been finally settled in his favor notwithstanding any question of the validity of § 10–151(b)(6). The money judgment that is thus conceded to be due to diLeo for that period bears no relation to the controversy which is the subject of this appeal and it grants to diLeo "only that to which he is entitled in any event." *Allen v. Bank of Angelica*, 34 F.2d 658, 659 (2d Cir. 1929). See *Embry v. Palmer*, 107 U.S. 3, 8, 2 S.Ct. 25, 27 L.Ed. 346 (1882); *In re Electric Power & Light Corp.*, 176 F.2d 687, 690 (2d. Cir. 1949).

■ Even if this is considered a case in which a litigant accepts the benefits of a judgment on which his appeal is based, see *Wilson v. Pantasote Co.*, 254 F.2d 700 (2d Cir. 1958), we do not believe that an appeal is precluded. Subsequent to the decision of this court in *Wilson*, the Supreme Court espoused the principle that "where a judgment is appealed on the ground that the damages awarded are inadequate, acceptance of payment of the amount of the unsatisfactory judgment does not, standing alone, amount to an accord and satisfaction of the entire claim." *United States v. Hougham*, 364 U.S. 310, 312, 81 S.Ct. 13, 16, 5 L.Ed.2d 8 (1960). The good sense of that rule is apparent in this case. DiLeo cannot have considered an award for the 1973–1974 school year to have constituted adequate damages when it is clear that the purpose of his lawsuit was to regain his employment as a teacher and he had already been termi-

nated for the 1974–1975 and succeeding school years.

We also note that we would reach the same result by applying the test of appealability which recently has been adopted by at least three other circuits. Under this test, a party who accepts the benefits of a judgment is foreclosed from taking an appeal only if the circumstances indicate a mutual intent finally to settle all claims in dispute and thereby to terminate the litigation. See *United States for Use and Benefit of H & S Industries, Inc. v. F. D. Rich Co.*, 525 F.2d 760, 764–65 (7th Cir. 1975); *Hawaiian Paradise Park Corp. v. Friendly Broadcasting Co.*, 414 F.2d 750, 752 (9th Cir. 1969); *Gadsden v. Fripp*, 330 F.2d 545, 548 (4th Cir. 1964). See also 9 Moore, Federal Practice ¶ 203.06 at 719 (1975). Termination of diLeo for "improper conduct towards students" will undoubtedly cause him difficulty in securing future teaching positions. Therefore, diLeo cannot be said to have intended a $6300 judgment to have settled his claim that he was wrongfully dismissed from a position, of which he has been deprived since 1973, because the statute pursuant to which he was dismissed was unconstitutional. However, since we have concluded that this case is appealable under the standards prevailing in this circuit, we need not rest our conclusions on the "intent of the parties" rationale.

### Vagueness

The notion of due process requires that sanctions be imposed on individuals only if they could reasonably have known in advance that their questioned behavior had been proscribed. In accordance with this principle, the Supreme Court has held that a statute may be void for vagueness in order to ensure that individuals are fairly apprised in advance regarding the specific conduct which the legislature has prohibited. See *Smith v. Goguen*, 415 U.S. 566, 573, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974); *Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). DiLeo contends that the Connecticut statute which authorized his dismissal for "other due and sufficient cause" failed sufficiently to inform him of the kind of conduct which is proscribed. We disagree.

We do not agree with the district court that vagueness in the statute could be cured by *subsequent* explanation by the Board of which acts it charged as falling within the scope of § 10–151(b)(6). Due process requires *prior* notice of what constitutes forbidden behavior. See *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972).

In the instant case, however, diLeo must have known beforehand that the conduct for which he was terminated fell within the proscriptions of the statute. The test of a statute's vagueness for due process purposes is to be made with respect to the actual conduct of the actor who attacks the statute and not with respect to hypothetical situations at the periphery of the statute's scope or with respect to the conduct of other parties who might not be forewarned by the broad language. See *United States v. Powell*, 423 U.S. 87, 93, 96 S.Ct. 316, 46 L.Ed.2d 228 (1975); *United States v. Mazurie*, 419 U.S. 544, 550, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975); *Parker v. Levy*, 417 U.S. 733, 756, 94 S.Ct. 2547, 2562, 41 L.Ed.2d 439 (1974) ("One to whose conduct a statute clearly applies may not successfully challenge it for vagueness.")

The evidence presented to the Board of Education allowed it to conclude that diLeo had engaged in a persistent pattern of neglecting his professional duties and harassing and humiliating students. There was evidence that his conduct continued and worsened after diLeo met with school administrators to resolve complaints received from parents and students regarding his classroom performance. In these circumstances it cannot be said that diLeo did not or should not reasonably have known that such behavior constituted due and sufficient cause for dismissal. Nor can he successfully contend that he had to guess whether the challenged statute would apply to such derelictions and bizarre conduct. See *Connally v. General Construction Co.*, 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926).

■ The applicability of the statute to diLeo's conduct was even clearer in light of the well-established principle of *ejusdem generis*. Where general terms in a statute follow an enumeration of terms with specific meaning, the general terms can be expected to apply to matters similar to those specified. See *United States v. Powell, supra,* 423 U.S. at 91, 96 S.Ct. 316; *United States v. Alpers,* 338 U.S. 680, 683, 70 S.Ct. 352, 94 L.Ed. 457 (1950); *In re Weaver,* 339 F.Supp. 961, 962–63 (D.Conn.1972). In the present case, the challenged general subsection, § 10–151(b)(6), follows delineation of five grounds for dismissal the meanings of which appellant concedes can be understood by a person of reasonable intelligence. These five grounds all relate to the capacity of a teacher to perform his professional duties. Under the rule *ejusdem generis,* therefore, the scope of § 10–151(b)(6) must include conduct relevant to performance of teaching duties. The legislature obviously intended the statutory proscription to embrace classroom performances as professionally unacceptable as diLeo's were. Thus, diLeo must fail in his claim that the statute is unconstitutionally vague as applied to him.

■ Judge Newman suggests in his dissent, however, that the court should abstain from deciding this issue, in accordance with the doctrine of *Railroad Commission v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Where there may be a construction of state law that could obviate the need for consideration of a constitutional question, and interpretation is difficult, a federal court may in its discretion abstain so as to serve the interests of federalism by allowing prior state court resolution of the state law question. *Id.*

■ Nevertheless, we do not believe we should abstain on the issue of the vagueness of the statute *as applied.* We find diLeo's conduct to fall squarely within the core of the statute's proscription, and feel sure that a state court would agree. We are not imposing any restrictive interpretation into § 10–151(b)(6) that might hamstring the operations of state educational administration. *Cf. Hostetter v. Idewild Bon Voyage Liquor Corp.,* 377 U.S. 324, 329, 84 S.Ct. 1293, 12 L.Ed.2d 350 (1964). Compare *County of Allegheny v. Mashuda Co.,* 360 U.S. 185, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959), with *Louisiana Power & Light Co. v. City of Thibodaux,* 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959). Therefore especially in light of the time already consumed in this litigation, *cf. Hostetter v. Idewild Bon Voyage Liquor Corp., supra; County of Allegheny v. Mashuda Co., supra,* 360 U.S. at 196–97, 79 S.Ct. 1060, it is proper that we should reach the merits of diLeo's vagueness claim as we have done *supra.*

### Overbreadth

■ DiLeo can argue the vagueness of the statute *as applied to others* if and only if he demonstrates that § 10–151(b)(6) is facially overbroad in violation of the First Amendment. Compare *Parker v. Levy,* 417 U.S. 733, 757–61, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974), with *id.* at 755–57, 94 S.Ct. 2547. Theoretically, a sweeping interpretation of the statutory words "other due and sufficient cause" to endow the Board with unrestrained discretionary power of termination could chill teachers' exercise of their rights to free speech. In his brief, however, appellant specifically declines to raise these First Amendment claims.

■ Moreover, as we have indicated *supra,* § 10–151(b)(6) is readily susceptible to a saving construction under which it applies only to conduct bearing on the performance of teaching duties. A saving construction is especially appropriate in an area such as discipline of teachers, where a myriad of uncontemplated situations may arise and it is not reasonable to require a legislature to elucidate in advance every act that requires sanction. Some general "catchall" phrase may be incorporated to ensure that the legislature's inability to detail all matters meant to be proscribed does not permit clearly improper conduct to go uncorrected. Application of the accepted rule of *ejusdem generis* indicates that § 10–151(b)(6) is not designed to permit dismissal

for mere disagreements over educational policy or for conduct that bears no relationship to a teacher's classroom conduct, but rather is limited to conduct reflecting on professional teaching capability. The statute thereby attains "an ascertainable and intelligible content," *United States v. Powell, supra,* 423 U.S. at 95, 96 S.Ct. 316 (Stewart, J. concurring), that coincides with the legislature's clear intent and that poses no First Amendment problems.

We are reasonably confident that Connecticut state courts would apply this *ejusdem generis* construction to § 10–151(b)(6) if called upon for their interpretation. See *Griffin v. Fancher,* 127 Conn. 686, 690, 20 A.2d 95, 97 (1941); *State v. Certain Contraceptive Materials,* 126 Conn. 428, 430–31, 11 A.2d 863, 864–65 (1940); *State v. Arpino,* 24 Conn.Sup. 85, 186 A.2d 827, 830–31 (App. Div.1962). Hence, the statute as enacted is not a significant burden on the exercise of First Amendment rights, and we should not sustain an overbreadth challenge to the statute even if that challenge had been argued before us. Cf. *Broadrick v. Oklahoma,* 413 U.S. 601, 613, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); Note, *The First Amendment Overbreadth Doctrine,* 83 Harv.L.Rev. 844, 894–95 n.189 (1970). Consequently, it is not necessary for us to attempt to make a comprehensive and definitive interpretation of the statute in the present case. If follows that abstaining on this issue is the wiser course. See *Zwickler v. Koota,* 389 U.S. 241, 251 n.14, 88 S.Ct. 391, 19 L.Ed.2d 444, (1967). Leaving the interpretative task to Connecticut state courts handling future cases ensures that we cause no unnecessary embarrassment to the functioning of Connecticut educational institutions.

Affirmed.

NEWMAN, District Judge (dissenting):

Because I believe the decision whether to construe Connecticut's teacher termination statute literally or narrowly should be made by the Connecticut courts, I think the Trial Court should have abstained pending state court construction, and I therefore dissent from this Court's affirmance of the judgment sustaining appellant's termination.

Appellant, a tenured public school teacher, was terminated for conduct found by the Bloomfield Board of Education to fall within one of the six categories of reasons specified by Conn.Gen.Stat. § 10–151 as sufficient for teacher termination. That category is "other due and sufficient cause." Conn.Gen.Stat. § 10–151(b)(6). The Trial Judge thought this category, standing alone, vague, and the majority of this Court appears to agree. And while this Court rejects the Trial Court's ruling that the vice of unconstitutional vagueness can be cured by the Board's after-the-fact specification of charges, it nevertheless provides its own after-the-fact narrow construction of the state statute to give it a meaning that passes constitutional muster. That disposition of the case raises three issues: (1) whether such a construction is correct, (2) whether it may be done in appellant's case, and (3) whether it should be done by a federal court. I deal with the first two issues briefly because for me the third issue is decisive.

1. The majority construes subsection (b)(6) to be limited to "conduct reflecting on professional teaching capability," a construction derived by reading the subsection in light of the five subsections that precede it and construing them to cover classroom performance. That is surely a permissible construction but not an inevitable one. Since one of those preceding subsections, § 10–151(b)(2), covers "insubordination against reasonable rules of the board of education," the argument is available that the legislature, by enacting subsection (b)(2), has delegated to the board of education plenary power to specify standards of classroom performance, and that the addition of subsection (b)(6) must mean something more—a non-classroom related category of broad dimension.

2. Since one of the principles safeguarded by the vagueness doctrine is that no one shall be penalized for conduct without fair notice[1] that the conduct is proscribed,

---

1. In this context fair notice obviously means only opportunity to acquire notice rather than actual notice; otherwise ignorance of the law would be more of an excuse than we have been led to believe.

*Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972), it is somewhat anomalous to have that notice supplied in the course of litigation that follows the challenged conduct. Whether a state court's narrowing construction of its own statute can save a statute from vagueness attack in the very case in which the attack is made is an issue that has drawn varying responses from the Supreme Court. In *Winters v. New York,* 333 U.S. 507, 514–15, 68 S.Ct. 665, 670, 92 L.Ed. 840 (1948), the Court said, "We assume that the defendant, at the time he acted, was chargeable with knowledge of the scope of subsequent interpretation" and referred to *Lanzetta v. New Jersey,* 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939). Yet in *Lanzetta* the Court had observed, "It would be hard to hold that, in advance of judicial utterance upon the subject, [defendants] were bound to understand the challenged provision according to the language later used by the [state] court." *Id.* at 456, 59 S.Ct. at 621. More recently the Court said in *Bouie v. City of Columbia,* 378 U.S. 347, 352–53, 84 S.Ct. 1697, 1702, 12 L.Ed.2d 894 (1964), "Even where vague statutes are concerned, it has been pointed out that the vice in such an enactment cannot 'be cured in a given case by a construction in that very case placing valid limits on the statute' . . . ." Interestingly, the internal quote in *Bouie* is from law review commentary, and no case citation is supplied.

Perhaps this apparent uncertainty is explicable by reference to the distinction between statutes so vague as to have no meaning at all, *Coates v. City of Cincinnati,* 402 U.S. 611, 614, 91 S.Ct. 1686, 29 L.Ed.2d

214 (1971), and those with a reasonably certain core of meaning that applies to the conduct in question, even though vagueness objections may be encountered at the outer limits of the statute's coverage, see, *e. g., Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). It may well be that in the very case in which a vagueness attack is made, a court is entitled to construe the statute as one that has an ascertainable core meaning and to sustain the challenged action upon a finding that the plaintiff (or criminal case defendant) had a fair warning of that core meaning and that his conduct fell within it. See *Dombrowski v. Pfister,* 380 U.S. 479, 491 n.7, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). But the question remains, as to state statutes, whether that construction should be made by a state or federal court.

3. The Supreme Court has rarely if ever given a narrowing construction to broad terms of a state statute proscribing conduct to save it from a vagueness attack.[2] When it considers vagueness attacks on state statutes, it has the benefit of state court construction either in the very case under review, *e. g., Grayned v. City of Rockford, supra; Colten v. Kentucky,* 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972), or in the decision affirming the conviction from which habeas corpus relief is sought, *e. g., Smith v. Goguen,* 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974); *Gooding v. Wilson,* 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972). See Amsterdam, "The Void-For-Vagueness Doctrine in the Supreme Court" 109 U.Pa.L.Rev. 67, 68 n.4 (1960). Of course the Court has, without benefit of state court construction, ruled

---

**2.** In *Cole v. Richardson,* 405 U.S. 676, 92 S.Ct. 1332, 31 L.Ed.2d 593 (1972), the Court did narrowly construe (or at least reject a three-judge district court's broad construction of) a state-mandated oath, without benefit of state court construction. That was done essentially in response to the claim of overbreadth, a claim which, to the extent still available, *see Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973), is normally inappropriate for abstention, *Baggett v. Bullitt,* 377 U.S.

360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964). Significantly, the Court in *Cole* did not believe the oath requirement encountered any vagueness objection at all. "[T]he oath is 'no more than an amenity.' It is punishable only by a prosecution for perjury and, since perjury is a knowing and willful falsehood, the constitutional vice of punishment without fair warning cannot occur here." 405 U.S. at 685, 92 S.Ct. at 1337 (citation and footnote omitted).

that certain words of a statute plainly cover the conduct in question, e. g., *Broadrick v. Oklahoma, supra,* but in cases like *Broadrick,* the plaintiffs are not claiming that the statute has no meaning at all; their contention is essentially one of overbreadth—that the statute while clear at its core, would inhibit protected First Amendment activities by the uncertainty at its outer limits. See also *Young v. American Mini Theatres, Inc.,* —— U.S. ——, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976).

The plaintiff in our case asserts that the challenged standard, "other due and sufficient cause," has no meaning at all. The majority does not suggest that this phrase *as written* has a core meaning that plainly applies to plaintiff's conduct. Instead it supplies a construction of the statute that limits its coverage to "conduct reflecting on professional teaching capability" and then concludes that plaintiff's conduct falls within the core meaning of that narrowed standard. And in asserting the obligation to determine whether the statute can be given this narrowing construction, it cites only cases involving federal statutes, as to which a federal court's responsibility for statutory construction is clear.

Perhaps the Connecticut courts would agree with the narrowing construction supplied by the majority. But they may not. Recently the Connecticut Supreme Court considered a vagueness challenge to the state's student expulsion statute, found it not susceptible to a narrowing construction, and upheld the constitutional challenge. *Mitchell v. King,* Conn., 363 A.2d 68, 37 Conn. L.J. No. 3 at 4 (1975). The majority of this Court finds the statutes in that case and this distinguishable, but we do not know if the Connecticut courts would think that the Connecticut legislature had intended to infuse a more precise meaning into the vague phrase of the teacher termination law than it did with respect to the student expulsion law.

There is further reason for letting the state courts decide the meaning of this statute. The vagueness doctrine serves not only to provide fair warning to the public but also to guard against excessive legislative delegation that might permit arbitrary determinations by factfinders. See *Grayned v. City of Rockford, supra,* 408 U.S. at 108–09, 92 S.Ct. 2294. The Connecticut courts might well conclude that the challenged statute delegates standardless authority to local boards of education, and the state courts might decide that even if a narrowing construction is available, they will decline to adopt it, preferring the legislature make *its* decision as to the appropriate scope of authority for boards of education to have in teacher terminations.

The Supreme Court has frequently required abstention for state court construction of state statutes challenged for vagueness. See, e. g., *Lake Carriers' Assn. v. MacMullan,* 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972); *Harrison v. NAACP,* 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959); *Albertson v. Millard,* 345 U.S. 242, 73 S.Ct. 600, 97 L.Ed. 983 (1953); see also *Musser v. Utah,* 333 U.S. 95, 68 S.Ct. 397, 92 L.Ed. 562 (1948). In the rare situation when the Court has considered abstention inappropriate, considerations quite different from those in this case have been present. Thus, in *Baggett v. Bullitt,* 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964), the challenge was to the vagueness of an oath requirement, rather than a penal or regulatory standard of conduct, and the plaintiff asserted that the oath requirement inhibited the exercise of First Amendment rights. The plaintiff here makes no claim that he is deterred from the assertion of First Amendment rights; his sole claim is that the regulatory statute lacks any meaning at all. Moreover, the Court's rejection of abstention in *Baggett* cannot realistically be separated from its conclusion that the challenged oath was unconstitutional.

Due regard for the primacy of a state's role in educational matters adds a further reason why the state courts should be given the opportunity to decide whether or not this state statute has a core meaning that saves it from unconstitutional vagueness.

Any resulting delay in final adjudication stems from the plaintiff's choice of pursuing the litigation through federal forums. Finally, it should be noted that neither the District Court, which doubted the validity of the statute in the absence of the unavailing specification of charges, nor this Court have had the benefit of the views of the appropriate officials of the state whose statute is being construed. I would remand with directions to abstain.[3]

---

3. Abstention to secure state court construction may encounter a procedural difficulty not normally present in typical instances of *Pullman* abstention. Normally, the federal court plaintiff can tender to the state court only the state law issue of how the state statute is to be construed, reserving his right to return to federal court to litigate his federal question in the event the state court construction keeps the controversy alive. *See England v. Louisiana State Bd. of Medical Examiners,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964). Usually the issue tendered to the state court is whether or not the state statute should be construed to cover the conduct in question. That is not the question this plaintiff would want answered. He does not seriously dispute that the statute, if narrowly construed, would cover his conduct, nor can he dispute that the statute would cover his conduct if broadly construed. Thus, he has no controversy with the defendants if he asks the state courts to rule only whether his conduct is covered. His claim is that the statute is so broad as to have no ascertainable meaning. The defendants contend the statute can and should be construed narrowly. A state court may be understandably reluctant to resolve those contentions since the dispute is academic unless joined with an attack upon the statute as unconstitutionally vague if broadly construed. But if the plaintiff asserts in state court that the statute is unconstitutionally vague in order to have it construed, he may have difficulty reserving his right to return to federal court under *England.* This procedural anomaly should not prevent us from affording the state courts the opportunity to construe the state statute. *England* construed *Government & Civil Employees Organizing Comm. v. Windsor,* 353 U.S. 364, 77 S.Ct. 838, 1 L.Ed.2d 894 (1957), to mean only that a plaintiff must inform the state courts what his federal claims are, so that the challenged statute may be construed in light of those claims, 375 U.S. at 420, 84 S.Ct. at 461. And "evidence that a party has been compelled by the state courts to litigate his federal claims there will of course preclude a finding that he has voluntarily done so." *Id.* at 422 n.12, 84 S.Ct. at 468. If abstention were pursued, it will be time enough to consider whether the *England* procedure should be modified when a vagueness issue is raised or whether the normal application of collateral estoppel should be somewhat relaxed after the plaintiff has decided how to frame his issues for state court consideration and after the state courts have responded to his lawsuit.